# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:10-CV-439-FDW-DCK

| | |
|---|---|
| LENDINGTREE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ZILLOW, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Consolidated Motion to Dismiss Defendants' *Walker Process* Counterclaims" (Document No. 109). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>denied</u>.

## I. BACKGROUND

On September 24, 2010, LendingTree, LLC ("Plaintiff") filed its First Amended Complaint ("Complaint") against Zillow, Inc. ("Zillow"), NexTag, Inc. ("NexTag"), Quinstreet, Inc. and Quinstreet Media, Inc. (collectively "Quinstreet"), and Adchemy, Inc. ("Adchemy") (collectively "Defendants"). (Document No. 14).[1] In the Complaint, Plaintiff alleges that Defendants infringed upon Plaintiff's '816 patent, "Method and Computer Network for Co-Ordinating a Loan over the Internet" (the "'816 patent"). <u>Id.</u>, pp.9-10. Additionally, Plaintiff alleges that Zillow infringed upon Plaintiff's '594 patent, "Method and Computer Network for Co-Ordinating a Loan over the Internet"

---

[1] Leadpoint, Inc. also was initially a Defendant in this suit, but was terminated on July 6, 2011. (Document No. 124).

(the "'594 Patent"). Id., pp.8-9. Plaintiff states that Defendants infringed upon these patents by operating various websites that match Internet borrowers and mortgage lenders. Id., pp.6-8.

Defendants Adchemy and Zillow filed their First Amended Answers and Counterclaims on March 29, 2011. (Document Nos. 92, 93). NexTag and Quinstreet filed their Amended Answers and Counterclaims on March 30, 2011. (Document Nos. 95, 96). Each of Defendants' counterclaims are substantially identical, although NexTag has not asserted a Walker Process[2] counterclaim, the only claim at issue in the present motion. (Document No. 95). As part of their Amended Answers and Counterclaims, Adchemy, Zillow and Quinstreet (collectively "Counterclaimants") contend that Plaintiff has violated the Sherman Antitrust Act, 15 U.S.C. § 2, by bringing "this action in an unlawful attempt to monopolize the market for Internet loan lead generation." (Document No. 92, p.30). See also (Document Nos. 93, 96).[3]

On April 15, 2011, Plaintiff filed its " . . . Consolidated Motion To Dismiss Defendants' Walker Process Counterclaims" (Document No. 109), accompanied by a "Memorandum in Support . . ." (Document No. 110). Counterclaimants filed a ". . . Memorandum In Support Of Their Opposition . . ." (Document No. 116) to the motion to dismiss on May 9, 2011. Plaintiff's "Reply Memorandum . . ." (Document No. 121) was filed on May 23, 2011, requesting oral argument on the motion. The undersigned heard oral argument on the motion on October 26, 2011. Thus, immediate review of the pending motion and recommendation for disposition to the Honorable Frank D. Whitney is now appropriate.

---

[2] 382 U.S. 172 (1965), discussed *infra* section III.

[3] The undersigned notes that the Counterclaimants' "Amended Answer and Counterclaims" are substantively identical. For the purpose of efficiency, the undersigned will reference the collective Counterclaims by using Adchemy's "Amended Answer and Counterclaim" (Document No. 92).

2

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); E. Shore Mkts., Inc v. J.D. Assoc. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). See also Robinson v. Am. Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

Counterclaimants contend that Plaintiff violated Section 2 of the Sherman Act by bringing this infringement suit in an attempt to monopolize the relevant market. Section 2 makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. It is well established that a patentee who brings an infringement suit may be subject to antitrust liability for the anticompetitive effects of that suit, including attempted monopolization. Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1068 (Fed. Cir. 1998).

There are essentially two components to a successful counterclaim for antitrust. First, an alleged infringer must strip the patentee's immunity from monopoly claims by proving either:

> (1) that the asserted patent was obtained through knowing and willful fraud within the meaning of Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172 (1965), or (2) that the infringement suit was a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.

Id. (citations omitted). See also C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1368 (Fed. Cir. 1998) (explaining that intentional fraud and sham litigation are two separate bases for subjecting a patentee to antitrust liability). Second, the alleged infringer must "show the basic elements of an antitrust violation defined by the regional circuit's law . . . ." Dippin' Dots, Inc. v. Mosey, 476 F.3d 1337, 1348 (Fed. Cir. 2007).

In the Fourth Circuit, attempted monopolization claims begin with a preliminary inquiry into market definition, which serves as a tool to determine a defendant's market power. E.I. duPont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 441 (4th Cir. 2011). The market definition has two components - the relevant product market and the relevant geographic market, and an alleged

4

infringer must allege both as a threshold matter. Id. Then, an alleged infringer must plead three elements to state a claim for attempted monopolization: (1) the use of anticompetitive conduct; (2) with specific intent to monopolize; and (3) a dangerous probability of success. Id. at 443.

In this case, Counterclaimants argue that both intentional fraud and sham litigation have been adequately pled, as well as the other elements of attempted monopolization under 15 U.S.C. § 2. (Document No. 92, p.30). In its supporting memoranda, Plaintiff contends that there are numerous deficiencies in the Counterclaim. (Document Nos. 110, 121). However, based on Plaintiff's "Reply Memorandum . . ." (Document No. 121) and the oral arguments heard on the motion, the undersigned finds that Plaintiff significantly narrowed the scope of its contest to two main issues: (1) whether, as a threshold matter, the Counterclaimants sufficiently defined the relevant product market; and (2) whether Counterclaimants adequately pled market share as a component of dangerous probability of success. Id.; see also (Document No. 163, p.6).

While each of these specific issues will be discussed below, the undersigned notes that all of the parties' arguments have been carefully considered. The undersigned finds that Counterclaimants have adequately pled the first component of an antitrust counterclaim, with sufficient particularity. The question remaining is whether Counterclaimants have sufficiently pled attempted monopolization by Plaintiff.

    A.    **Relevant Product Market**

Plaintiff argues that Counterclaimants have failed to state a claim for attempted monopolization because the Counterclaims do not allege facts to sufficiently define the relevant product market. (Document Nos. 110, 121). "With respect to product market, competing products are in the same market if they are readily substitutable for one another." Loren Data Corp v. GXS, Inc., 2011 WL 3511003, at *7 (D. Md. Aug. 9, 2011) (citing Brown Shoe Co. v. United States, 370

U.S. 294, 325 (1962)). Thus, the relevant product market can be defined by "the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." Brown Shoe Co., 370 U.S. at 325.

Counterclaimants have the burden of pleading "enough facts to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1960. However, the Fourth Circuit has recently reflected on the difficulty in dismissing antitrust claims for failure to adequately plead the relevant market, given that "market definition is a deeply fact-intensive inquiry." E.I. duPont, 637 F.3d at 443-44. Thus, "dismissals at the pre-discovery, pleading stage remain relatively rare and are generally limited to certain types of glaring deficiencies such as failing to allege a relevant market." Id. at 444 (internal citations omitted).

In this case, Plaintiff argues that the Counterclaimants' market definition is insufficient because the Counterclaim "contains no facts describing the scope or characteristics of the market." (Document No. 110, p.11). Although Counterclaimants' factual allegations regarding product market could have been more substantial, it cannot be said that Counterclaimants have failed "even to attempt a plausible explanation as to why a market should be limited in a particular way." E.I. duPont, 637 F.3d at 444.

The Counterclaims state that the relevant product market is the market for "Internet loan lead generation," which refers to "websites that match consumers interested in a loan product (i.e. borrowers) with sellers of loan products (i.e. lenders) over a network." (Document No. 92, ¶¶ 92, 94). The Counterclaims describe Plaintiff, all Defendants, and two other corporations as participants in the United States market for Internet loan lead generation, and further note that Plaintiff's CEO Douglas Lebda claims that the '816 patent covers every entity operating in the market. Id. at ¶¶ 98, 99. Finally, Counterclaimants allege that Plaintiff, by claiming it is entitled to lost profits, admits

6

that there are no acceptable non-infringing substitutes in the relevant market, and thus there is no cross-elasticity of demand between Internet loan lead generation and other means to generate loan leads. Id. at ¶¶ 99, 93.

In its supporting memoranda and at oral argument, Plaintiff's principal argument pertains to the latter of these allegations. Plaintiff contends that it can ultimately prove lost profits even if there are non-infringing substitutes in the market, meaning that Counterclaimants' inference in defining the bounds of the market by reference to lost profits is unwarranted. (Document No. 110, pp.12-13). It is true that "[e]ven in the presence of acceptable, non-infringing alternatives, a patentee may recover lost profits using a market share analysis." Borgwarner, Inc. v. Honeywell Int'l, Inc., 750 F. Supp. 2d 596, 612 (W.D.N.C. 2010). However, lost profits are generally proved by establishing "but for causation," which includes showing "the absence of acceptable, noninfringing substitutes." Id. (citing Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978). Thus, Counterclaimants are reasonable in their inference that Plaintiff's claim for lost profits presupposes the absence of non-infringing substitutes in the market. On a motion to dismiss, the facts pled and this inference are enough to plausibly delineate the boundaries of the market, which is all that is required in the Fourth Circuit. E.I. duPont, 637 F.3d at 443-44.

Ultimately, whether the market for Internet loan lead generation constitutes a product market for antitrust purposes is a factual allegation that should be determined by the fact finder. Loren Data, 2011 WL 3511003, at *7. Accepting as true Counterclaimants' factual allegations regarding the relevant market, the undersigned finds that the Counterclaims give Plaintiff "fair notice of what the claim is and the grounds upon which it rests." Erickson, 551 U.S. at 93-94 (internal citations omitted). Therefore, Counterclaimants have pled a relevant product market in terms sufficient to state a claim for attempted monopolization.

### B. Dangerous Probability of Success

In addition to arguing that Counterclaimants failed to define the relevant market, Plaintiff contends that Counterclaimants have "failed to show that LendingTree's alleged anticompetitive scheme has a dangerous probability of success." (Document No. 110, p.14). More specifically, Plaintiff argues that the Counterclaims do not allege that Plaintiff "has a sufficient market share to attempt to monopolize the purported relevant market." Id. In M & M Medical Supplies and Service, Inc. v. Pleasant Valley Hospital, Inc., the Fourth Circuit set forth the facts relevant to a determination of a "dangerous probability of success" in monopolizing a relevant market. 981 F.2d 160, 168 (4th Cir.1992). These include market share, ease of entry into the market, and unjustified exclusionary conduct. Id. Like the inquiry into the relevant product market, many courts find that the question of dangerous probability of success is a "particularly fact-intensive inquiry," that "typically should not [be] resolve[d] . . . at the pleading stage unless it is clear on the face of the complaint that the dangerous probability standard cannot be met as a matter of law." Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 318 (3d Cir. 2007).

Plaintiff asserts that Counterclaimants fail to show that there is a dangerous probability of success because Counterclaimants have not alleged market share. (Document No. 110, pp.14-15). Plaintiff has cited no precedential authority for the proposition that market share must be alleged as part of the attempted monopolization claim, but instead notes numerous non-binding cases. Id., p.14; (Document No. 121, p.4-5). In fact, the Fourth Circuit in M&M recognized that while market share is relevant to this inquiry, "its relevance is tempered by evidence of the other two elements of the claim," anticompetitive or predatory conduct and a specific intent to monopolize. Id.; see also Rescue Phone, Inc. v. Enforcement Tech. Grp., Inc., 2007 WL 2045514, at *4 (E.D. Va. July 9, 2007) ("[I]t is clear no minimum market share is absolutely required to evidence an Attempted

8

Monopolization claim as long as other evidence supports the claim, such as anticompetitive acts, unjustified exclusionary conduct and intention to monopolize . . .").

Looking to the Counterclaims, Counterclaimants set forth sufficient allegations to plead that Plaintiff has a dangerous probability of achieving monopoly power. Counterclaimants allege that Plaintiff's own website claims that Plaintiff "is the nation's number one online lending exchange, providing a market place that connects consumers with multiple lenders that compete for their business." (Document No. 92, ¶ 96). As to ease of entry into the relevant market, Counterclaimants allege that Plaintiff "seeks to create an insurmountable barrier to entry" by seeking an injunction against all Defendants. Id. at ¶ 112. Moreover, the undersigned finds it probative that the majority of participants listed as competing in the market are involved in this lawsuit as Defendants. Id. at ¶ 99. This certainly supports Counterclaimants' allegation that if Plaintiff is successful in enjoining Defendants, when taken together with its prior suit against and acquisition of other competitors, and its claim that there are no acceptable non-infringing substitutes, Plaintiff could obtain a monopoly in the United States market for Internet loan lead generation. Id. at ¶ 115.

Even assuming *arguendo* that these statements amount to a weak showing of market power, the Fourth Circuit is clear that such a showing "can be offset by more compelling evidence of intent to monopolize or anticompetitive conduct." Rescue Phone, 2007 WL 2045514, at *4 (citing M&M, 981 F.2d at 168). As to these elements, Counterclaimants allege that Plaintiff fraudulently procured its patents and then attempted to enforce those patents to push Defendants out of the market. (Document No. 92, ¶¶ 104-06, 108-09). Assuming these allegations are true, such conduct would amount to an attempt to exclude rivals on some basis other than efficiency. These allegations evidence both anticompetitive conduct and the intent with which Plaintiff engaged in Walker Process fraud and/or sham litigation, the other elements necessary to plead attempted

9

monopoliztion. M&M Medical, 981 F.2d at 166. See also Transweb, LLC v. 3M Innovative Props. Co., 2011 WL 2181189, at *16 (D.N.J. June 1, 2011). Accordingly, even if Counterclaimants had set forth a weak showing of market share, the factual allegations sufficiently allege that Plaintiff is a dominant power in the Internet loan lead generation market and that elimination of Defendants is likely to destroy competition in that market.

## IV. CONCLUSION

In sum, the undersigned recognizes the fact-intensive nature of inquiries into the relevant product market and the dangerous probability of success. As noted, it may have strengthened the Counterclaims had the Counterclaimants provided more detailed factual allegations of all elements of attempted monopolization, including Walker Process fraud and sham litigation. However, on a motion to dismiss, Counterclaimants have pled enough facts to satisfy the standard clarified under Iqbal, 129 S. Ct. 1937, and Twombly, 550 U.S. 544, as well as the requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure. Based on a consideration of all of the issues presented to the Court, the undersigned concludes that Plaintiff's motion to dismiss should be denied.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Consolidated Motion to Dismiss Defendants' *Walker Process* Counterclaims" (Document No. 109) be **DENIED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections.

Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Frank D. Whitney.

**IT IS SO RECOMMENDED**.

Signed: November 4, 2011

David C. Keesler
United States Magistrate Judge