UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Docket No. 3:10-cv-00439-FDW-DCK

| | |
|---|---|
| LENDINGTREE, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>ZILLOW, INC., et al.<br><br>        Defendants. | **MEMORANDUM IN SUPPORT OF NEXTAG, INC.'S MOTION TO COMPEL DISCOVERY FROM LENDINGTREE, LLC**<br><br>**REDACTED** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1
II. BACKGROUND .................................................................................................. 2
    A. The parties' business relationship precedes the Critical Date ................. 2
    B. LendingTree's deficient production of documents dated prior to 2006 ............ 2
III. LENDINGTREE SHOULD BE REQUIRED TO SEARCH ITS BACKUP TAPES FROM 2003 TO 2005 FOR DOCUMENTS CONTAINING THE KEYWORD "NEXTAG." ......................................................................................... 3
    A. RFP 5 seeks documents critical to NexTag's defenses ........................... 3
    B. LendingTree's production of responsive documents dated between 2003 and 2005 is significantly deficient. ........................................................... 3
        1. LendingTree failed to produce its 2005 letter to NexTag, the very document that forms the basis of LendingTree's allegation of willful infringement. ........................................................................ 3
        2. LendingTree likely has additional responsive documents from 2003 to 2005. .................................................................................. 4
    C. LendingTree incorrectly asserts that it has no obligation to search its backup tapes because backup tapes are not "reasonably accessible under the Discovery Agreement." ....................................................................... 5
    D. NexTag has not "waived" its discovery concerns or "agreed" that LendingTree need not search its backup tapes. ....................................... 6
IV. LENDINGTREE SHOULD BEAR THE COST OF SEARCHING ITS BACKUP TAPES. ................................................................................................. 7
    A. LendingTree reasonably anticipated litigation against NexTag since at least ████████. ........................................................................................ 8
    B. LendingTree Failed to Issue a Proper Preservation Notice. .................... 8
    C. LendingTree should bear the cost of searching its backup tapes because the missing documents became inaccessible after LendingTree reasonably anticipated litigation ................................................................................. 8
V. NEXTAG SHOULD BE GRANTED FEES AND COSTS ............................... 9
    A. NexTag should be awarded its expenses in pursuing discovery under RFP 5 because of LendingTree's negligence in preserving responsive documents. .................................................................................................. 9

# TABLE OF CONTENTS
## (continued)

| | | Page |
|---|---|---|
| | B. NexTag should be awarded its expenses in preparing its December 7th motion and in pursuing LendingTree's compliance of the February 6th Order | 10 |
| VI. | CONCLUSION | 11 |

ii. NEXTAG'S MEMO IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY

Case 3:10-cv-00439-FDW-DCK   Document 325-1   Filed 06/25/13   Page 3 of 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AC Aukerman Co. v. RL Chaides Const. Co.*,
　960 F.2d 1020 (Fed. Cir. 1992) ................................................................................................3

*Oppenheimer Fund, Inc. v. Sanders*,
　437 U.S. 340 (1978) ................................................................................................................7

*Quinby v. WestLB AG*,
　245 F.R.D. 94 (S.D.N.Y. 2006) ..............................................................................................7

*Silvestri v. Gen. Motors Corp.*,
　271 F.3d 583 (4th Cir. 2001) ..................................................................................................8

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
　269 F.R.D. 497 (D. Md. 2010) ..............................................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P.
　26(b)(2) ....................................................................................................................................7
　26(b)(3) ....................................................................................................................................8
　37(a)(5) ..................................................................................................................................11
　37(b)(2) ..................................................................................................................................11

iii.　NEXTAG'S MEMO IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY

Case 3:10-cv-00439-FDW-DCK   Document 325-1   Filed 06/25/13   Page 4 of 18

## I. INTRODUCTION

NexTag respectfully (and unfortunately) moves the Court to compel access to LendingTree's backup tapes. The backup tapes go to the heart of one of NexTag's most important defenses in this matter, namely, laches. NexTag's discovery request is i) focused, and ii) limited in time. The request seeks documents that simply mention "NexTag." Furthermore, the request is limited to a critical time period for NexTag's laches defense, i.e. 2003-2005. Despite the simplicity of the request, LendingTree has steadfastly refused to even acknowledge whether backup tapes in the relevant time period exist.

Timing is critical. LendingTree sued NexTag in this Court on September 8, 2010. A presumption of laches arises where the defendant knew or should have known of the infringement more than six years prior to the filing of the suit. Consequently, if LendingTree knew that NexTag was in the mortgage lead generation business prior to September 8, 2004 (the "Critical Date"), a presumption of laches arises.

Searching the backup tapes is not a "fool's errand." Indeed, LendingTree admits that it had an on-going business relationship with NexTag prior to the Critical Date. ███████████████████████████████████████████████████ It strains credulity that for the entire period prior to the Critical Date, LendingTree had only thirteen email messages mentioning "NexTag." Indeed, during 2003 alone, NexTag produced eighteen email messages with LendingTree, none of which were produced by LendingTree.

LendingTree's backup tapes are undeniably relevant—they may demonstrate LendingTree's knowledge of NexTag's accused system prior to the Critical Date. Given the fact that LendingTree and NexTag had a business relationship prior to the Critical Date, that there are likely many documents that LendingTree failed to produce, and LendingTree's "confirmation" that only its backup tapes may fill the gaps in its production, there is no justifiable reason for

1.

denying NexTag access to this critical source of evidence.

II. **BACKGROUND**

   A. **The parties' business relationship precedes the Critical Date**

LendingTree and NexTag were doing business together prior to the Critical Date.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

   B. **LendingTree's deficient production of documents dated prior to 2006**

LendingTree's document productions fall in two main categories:

1. Nearly 87,000 documents (in volumes LTZ001-011, LTZ022 and LTZ024) are recycled from LendingTree's prior litigations ("Recycled Documents"), without the requisite metadata.

2. Approximately 46,000 documents (in volumes LTZ012-LTZ021, LTZ023, LTZ025, LTZ026 and LTZ_Supp) ("New Documents").

(*See* Ex. C at C22, C34; *see also* Kuan Decl. ¶¶ 3-4.)

The Recycled Documents, although large in number, are light on relevance. Only 356 out of the 87,000 documents mention "NexTag." (Kuan Decl. ¶ 3.) In comparison, over 5,000 of the 46,000 New Documents mention "NexTag." (*Id.* ¶ 4.)

Even the production of the New Documents is seriously deficient. LendingTree did not produce any New Documents for 10 of its agreed-upon custodians. (*See* Kuan Decl. ¶ 5.) For

two critical custodians, Messrs. Douglas Lebda (LendingTree's founder and 30(b)(6) designee for nearly all non-financial topics) and Bob Harris, *LendingTree produced no custodial documents dated earlier than March 7, 2006*. (*Id.*)

### III. LENDINGTREE SHOULD BE REQUIRED TO SEARCH ITS BACKUP TAPES FROM 2003 TO 2005 FOR DOCUMENTS CONTAINING THE KEYWORD "NEXTAG."

#### A. RFP 5 seeks documents critical to NexTag's defenses.

RFP 5 seeks documents that refer to or relate to NexTag, any NexTag product, or any allegation against NexTag. Responsive documents—especially those from 2003 to 2005—are material to NexTag's laches defense. If LendingTree had constructive or actual knowledge of the accused NexTag service prior to the Critical Date, *i.e.*, September 8, 2004, then "the underlying critical factors of laches are presumed …." *See AC Aukerman Co. v. RL Chaides Const. Co.*, 960 F.2d 1020, 1035-36 (Fed. Cir. 1992).

Documents responsive to RFP 5 from the brief periods before and after the Critical Date are important to uncover the extent of LendingTree's knowledge of NexTag's services and LendingTree's reasons for delaying suit against NexTag.

#### B. LendingTree's production of responsive documents dated between 2003 and 2005 is significantly deficient.

LendingTree agreed to search for responsive documents containing the keyword "NexTag" from custodians identified by NexTag. (Ex. C at C1-C2, C8.) LendingTree, however, failed to produce critical documents responsive to RFP 5 that NexTag has in its own files.

##### 1. LendingTree failed to produce its 2005 letter to NexTag, the very document that forms the basis of LendingTree's allegation of willful infringement.

LendingTree's complaint alleges:

> In October 2005, Mr. Doug Lebda wrote to Mr. Greg Wharton, Vice

> President and General Counsel of NexTag, and offered NexTag a license
> to the '816 patent. Instead of taking a license to the '816 patent, NexTag
> opted to continue its willful, deliberate and intentional infringement of one
> or more claims of the '816 patent.

(Doc. 1 at 9.) LendingTree, however, did not produce this letter.[1] Yet, NexTag did. (Ex. A at NEXTAG00100746.)

Likewise, LendingTree failed to produce its correspondence with NexTag in 2003 relating to ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████.)

### 2. LendingTree likely has additional responsive documents from 2003 to 2005.

LendingTree also produced only one email—a newsletter—from the entire critical year of 2004 that was received by or sent from Mr. Lebda. (*See* Ex. B at LTZ0058283.) NexTag informed LendingTree of this gap (Ex. C at C13), yet LendingTree offered no response.

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████ it is implausible that Mr. Lebda had no other internal correspondence that mention "NexTag."

Similarly, LendingTree produced only ███████████████████████████

---

[1] LendingTree's inaccurate characterization of the Lebda letter demonstrates that it did not preserve it—the October 2005 letter was sent to NexTag's CEO, Mr. Ojha, not NexTag's General Counsel. (Ex. A at NEXTAG00100746.)

4. NEXTAG'S MEMO IN SUPPORT OF ITS
MOTION TO COMPEL DISCOVERY
Case 3:10-cv-00439-FDW-DCK   Document 325-1   Filed 06/25/13   Page 8 of 18

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

NexTag received these meager productions only by chance that these documents were otherwise responsive to requests in LendingTree's prior litigations that had nothing to do with NexTag and recycled by LendingTree in this litigation. (*See* Ex. C at C22.) It is implausible that LendingTree has no additional responsive email messages prior to the Critical Date.

### C. LendingTree incorrectly asserts that it has no obligation to search its backup tapes because backup tapes are not "reasonably accessible under the Discovery Agreement."

The Discovery Agreement provides that "[e]ach party retains the right to request additional information about specific ESI, including sources of ESI previously identified as not reasonably accessible, if that party can demonstrate that material, relevant, and responsive information that is not otherwise cumulative of information already produced can only be found through such additional efforts." (Doc. 77 at 3.)

LendingTree's internal business discussions from 2003 to 2005 relating to NexTag are material and non-cumulative to any information already produced. Moreover, these documents can only be found through searching LendingTree's backup tapes because LendingTree has failed to produce these documents after it completed its search for "reasonably accessible documents." (Ex. C at C25.) The Discovery Agreement authorizes NexTag's request that LendingTree search its backup tapes for the responsive documents in this circumstance.

However, LendingTree insisted on the precondition that NexTag pay for all costs for locating and searching LendingTree's backup tapes. (*Id.* at C36-37.) ***LendingTree even refused to tell NexTag how many backup tapes exist for this period.*** (Ex. C at C51.) LendingTree refuses to cooperate despite the testimony by its founder, CEO and 30(b)(6) designee, Mr.

Lebda, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ (Ex. G at 346, 296.) LendingTree has no legitimate justification for its refusal to cooperate.

### D. NexTag has not "waived" its discovery concerns or "agreed" that LendingTree need not search its backup tapes.

LendingTree incorrectly contends that NexTag "waived" this motion by waiting more than 14 days after the March 5th meet-and-confer. (Ex. C at C49-C50.) The sequence of events subsequent to the March 5th meet-and-confer shows otherwise. It demonstrates NexTag's diligence in seeking LendingTree's cooperation without Court involvement:

- April 22, 2013: LendingTree made its final production of documents responsive to RFP 5 (Ex. C at C25, C57);

- April 26, 2013, May 1, 2013 and May 6, 2013: NexTag provided detailed explanations why LendingTree's discovery responses were deficient (*id.* at C29, C30-C31, C32-C34);

- May 17, 2013: Mr. Lebda testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. G at 346, 296.);

- May 21, 2013: NexTag asked for an inventory of backup tapes (Ex. C at C43);

- May 24, 2013: LendingTree claims to be "working diligently" to provide an answer (*id.* at C44); and,

- June 8, 2013: after the close of discovery, LendingTree said it would not provide the requested information (*id.* at C51).

Any "delay" in NexTag's seeking the Court's assistance is due solely to LendingTree's refusal to

cooperate with NexTag's repeated attempts to resolve this matter without involving the Court.

LendingTree also incorrectly claims that the parties' "agree[ment] to a compromise" exempts LendingTree from having to search its backup tapes. (Ex. C at C49.) However, LendingTree's self-serving "agreement"—LendingTree's letters dated March 8th and March 29th—shows only the parties agreed on the custodians and the keyword for searching documents responsive to RFP 5. (*See id.* at C8; *accord* C10-C15.) There was no mention of searching, or not searching, backup tapes for documents responsive to RFP 5 when it became apparent that significant gaps remained.

Until LendingTree completed its document production in response to RFP 5 on April 22, 2013, NexTag could not have known whether searching backup tapes would be necessary. NexTag never agreed to release LendingTree from its obligation to produce documents responsive to RFP 5 from 2003-2005.

## IV. LENDINGTREE SHOULD BEAR THE COST OF SEARCHING ITS BACKUP TAPES.

"[T]he presumption is that the responding party must bear the expense of complying with discovery requests …." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). The responding party should be responsible for the cost of restoring and searching data that it converted into an inaccessible format after it should have anticipated litigation. *Quinby v. WestLB AG*, 245 F.R.D. 94, 104-105 (S.D.N.Y. 2006). The Federal Rules Advisory Committee noted that an "appropriate consideration" in assessing burden and expense in the context of claims that information is not reasonably accessible is "the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources." Committee Notes to 2006 Amendments to Rule 26(b)(2).

### A. LendingTree reasonably anticipated litigation against NexTag since at least ▮▮▮▮▮.

LendingTree contends in response to NexTag's Interrogatory 7 that:



(Ex. E at 12-13.) The attorney work product doctrine protects from discovery documents "prepared in anticipation of litigation or for trial …." Fed. R. Civ. P. 26(b)(3). In asserting attorney work product privilege to documents from as early as ▮▮▮▮▮ LendingTree reasonably anticipated litigation against NexTag by that date.

### B. LendingTree Failed to Issue a Proper Preservation Notice.

LendingTree had a duty to preserve evidence relevant to this litigation at least as early as



*See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) (citation omitted).

LendingTree, however, did not institute a document-preservation policy until ▮▮▮▮▮ (*See* Ex. F at 33.) LendingTree's 30(b)(6) designee on document collection and production, Mr. Lebda, likewise testified that ▮▮▮▮▮ LendingTree, in fact, failed to preserve and produce this critical October 2005 letter.

### C. LendingTree should bear the cost of searching its backup tapes because the missing documents became inaccessible after LendingTree reasonably anticipated litigation.

LendingTree "confirm[ed]" that responsive custodial documents prior to certain dates

that it failed to produce "are not reasonably accessible under the Discovery Order." (Ex. C at C37.) For example, LendingTree produced only documents from Mr. Lebda's custodial files dated on or after March 6, 2006 according to the metadata. (*See id.*) Per LendingTree's "confirmation," Mr. Lebda's custodial documents dated prior to March 6, 2006 are now inaccessible. It is reasonable to infer that those documents became inaccessible on or about March 6, 2006.

This inference is reinforced by the fact that LendingTree produced among its Recycled Documents an email ███████████████████████████████████████████████████ ████████████████ The inclusion of this email in LendingTree's Recycled Documents shows that as late as ████████████, this email and Mr. Lebda's custodial files were still reasonably accessible. However, the original version of this email was not produced to NexTag with the requisite metadata in LendingTree's production of New Documents. As such, after ████████████, this email along with the remainder of Mr. Lebda's custodial documents around that time became inaccessible. (*See* Ex. C at C35-C36.)

The conversion of responsive documents in Mr. Lebda's custodial files into an inaccessible format on or about March 6, 2006 thus took place after LendingTree reasonably anticipated litigation against NexTag. For this additional reason, LendingTree should incur the cost of searching its backup tapes for documents responsive to RFP 5 from 2003-2005.

## V. NEXTAG SHOULD BE GRANTED FEES AND COSTS

### A. NexTag should be awarded its expenses in pursuing discovery under RFP 5 because of LendingTree's negligence in preserving responsive documents.

Wrestling responsive documents out of LendingTree has been an odyssey. NexTag went to lengths to avoid involving the Court in yet another discovery dispute. Only when

9.      NEXTAG'S MEMO IN SUPPORT OF ITS
                                                MOTION TO COMPEL DISCOVERY
Case 3:10-cv-00439-FDW-DCK   Document 325-1   Filed 06/25/13   Page 13 of 18

LendingTree finally admitted that pre-Critical Date documents are inaccessible was NexTag left without recourse but to seek the Court's assistance.

LendingTree has been at negligent in preserving responsive documents. *See Victor Stanley, Inc. v. Creative Pipe, Inc*., 269 F.R.D. 497, 529-30 (D. Md. 2010) (citations omitted). LendingTree's negligence has unreasonably increased NexTag's cost in defending itself in this litigation. NexTag respectfully requests the Court to award NexTag its fees and expenses in pursuing LendingTree's compliance with RFP 5 when NexTag first detailed LendingTree's discovery deficiencies. *See id*. at 536.

### B. NexTag should be awarded its expenses in preparing its December 7th motion and in pursuing LendingTree's compliance of the February 6th Order

On February 6, 2013, the Court ordered LendingTree to "provide notice in writing to Defendant NexTag regarding those documents, or categories of documents, requested by NexTag for which the metadata is not reasonably accessible, along with an explanation for why it is not reasonably available, on or before March 8, 2013." (Doc. 268 at 7-8.) The Court also noted that NexTag may renew its request for its expenses related to its December 7, 2012 discovery motion if LendingTree fails to adequately supplement its responses. (*Id.* at 12.)

LendingTree's March 8, 2013 response did not discharge its obligations under the Order. LendingTree did not identify any specific document or categories that lack metadata. Nor did LendingTree provide a particularized explanation. Instead, LendingTree simply responded that "any of the 3,987 documents produced before September 2011" lack the requisite metadata "because the original files identified and produced in this litigation did not have such metadata, and alternative versions of those documents are not reasonably accessible." (Ex. C at C6.)

LendingTree supplemented its response on April 8, 2013, categorizing the vast majority of the documents produced without metadata as recycled from its prior litigations. (Ex. C at

C22-C24.) But LendingTree still refused to explain why the original versions of those Recycled Documents kept in the usual course of business are not reasonably available. (*Compare id.* at C32-C34 *with* C40-C42.)

NexTag respectfully submits that LendingTree's responses to the Court's Order were untimely and incomplete. NexTag thus respectfully requests the Court to award NexTag the expenses in the preparation of the December 7, 2012 motion and in its subsequent efforts in trying to obtain LendingTree's compliance with the Order. *See* Fed. R. Civ. P. at 37(b)(2).

## VI. CONCLUSION

For all the foregoing reasons, NexTag respectfully requests the Court to compel LendingTree to restore and search its backup tapes for documents from 2003-2005 with the keyword "NexTag" and award NexTag its fees and costs under Rule 37(a)(5) and 37(b)(2).

Dated: June 25, 2013                           Respectfully submitted,

                                        By:   */s/ Christopher C. Campbell*

                                              Thomas J. Friel, Jr. (*pro hac vice*)
                                              tfriel@cooley.com
                                              Matthew J. Brigham (*pro hac vice*)
                                              mbrigham@cooley.com
                                              COOLEY LLP
                                              Five Palo Alto Square
                                              3000 El Camino Real
                                              Palo Alto, CA  94306
                                              (650) 843-5848
                                              (650) 849-7400 (fax)

                                              Christopher C. Campbell (*pro hac vice*)
                                              ccampbell@cooley.com
                                              Nelson Kuan (*pro hac vice*)
                                              nkuan@cooley.com
                                              COOLEY LLP
                                              11951 Freedom Drive
                                              Reston, VA  20190-5656
                                              (703) 456-8000
                                              (703) 456-8100 (fax)

                                              Mark P. Henriques
                                              mhenriques@wcsr.com
                                              Womble Carlyle Sandridge & Rice, LLP
                                              One Wells Fargo Center, Suite 3500
                                              301 South College Street
                                              Charlotte, NC 28202-6037

                                              Tel:  (704) 331-4912
                                              Fax:  (704) 338-7830
                                              Email:

                                              *Attorneys for Defendant NexTag, Inc.*

# CERTIFICATE OF COMPLIANCE

This certifies that the foregoing brief complies with the word limitation set forth in section 3.c.i of the January 24, 2011 Claim Construction Order issued in this action. This brief contains no more than 3,000 words, exclusive of the case caption, table of contents, table of authorities, signature block, and certificates of compliance and service.

*/s/ Nelson Kuan*

Thomas J. Friel, Jr. (*pro hac vice*)
tfriel@cooley.com
Matthew J. Brigham (*pro hac vice*)
mbrigham@cooley.com
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
(650) 843-5848
(650) 849-7400 (fax)

Christopher C. Campbell (*pro hac vice*)
ccampbell@cooley.com
Nelson Kuan (*pro hac vice*)
nkuan@cooley.com
COOLEY LLP
11951 Freedom Drive
Reston, VA 20190-5656
(703) 456-8000
(703) 456-8100 (fax)

## CERTIFICATE OF SERVICE

This certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on June 25, 2013.


/s/  Dawn R. Roelofs