**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:10-CV-439-FDW-DCK**

| | |
|---|---|
| LENDINGTREE, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  **ORDER** |
| | ) |
| ZILLOW, INC., NEXTAG, INC., and | ) |
| ADCHEMY, INC., | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER IS BEFORE THE COURT** on "Defendant NexTag, Inc.'s Motion To Compel Production Of Documents Subject To Waiver Of Privilege" (Document No. 426). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is ripe for disposition. Having carefully considered the motion, the record, and applicable authority, as well as the arguments of counsel during a telephone conference on November 15, 2013, the undersigned will grant Defendant's "…Motion To Compel."

## I. BACKGROUND

On November 14, 2013, counsel for Defendant NexTag, Inc. ("Defendant" or "NexTag") contacted the undersigned's staff requesting assistance with a discovery dispute. Defendant's counsel asserted in an email that a discovery issue had arisen regarding a privilege log produced by Plaintiff LendingTree, LLC ("Plaintiff" or "LendingTree") following a search of backup tapes for the term "NexTag." Defendant requested that it be allowed leave to immediately file a motion to compel.

The undersigned held a telephone conference on November 15, 2013, to hear from both parties regarding the dispute and to determine the most efficient means of resolution. In the end,

the undersigned determined that a written motion was appropriate and set an expedited briefing schedule.

NexTag's pending "…Motion To Compel…" (Document No. 426) and "…Memorandum In Support Of Its Motion To Compel …" (Document No. 430) were filed on November 18, 2013. NexTag's motion specifically requests that

> the Court compel LendingTree to produce documents showing: (i) when did LendingTree's inside counsel advise LendingTree management or give LendingTree management reason to believe that NexTag's allegedly infringing product existed; (ii) whether LendingTree employees supplied any information to LendingTree's inside counsel relevant to that determination; (iii) the specifics of that information; and (iv) when it was supplied.

(Document No. 426, p.1). "LendingTree, LLC's Memorandum In Opposition To NexTag Inc.'s Motion To Compel Production Of Documents" (Document No. 436) was filed on November 22, 2013. As such, the pending motion is now ripe for disposition.

## II. STANDARD OF REVIEW

Rule 26 of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed.R.Civ.P. 26(c)(1).

2

Whether to grant or deny a motion to compel is generally left within a district court's broad discretion.  See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting District Court's substantial discretion in resolving motions to compel);  and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

> If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed.R.Civ.P. 37(a)(5)(A).  Likewise, if a motion is denied, the Court may award reasonable expenses, including attorney's fees, to the party opposing the motion.  Fed.R.Civ.P. 37(a)(5)(B).

### III. DISCUSSION

Defendant NexTag contends that "[l]aches is a complete bar to LendingTree's suit against NexTag." (Document No. 430, p.11).  By the instant motion, NexTag seeks to compel the production of documents that it believes are relevant to its affirmative defense of laches. (Document No. 430).  In particular, NexTag seeks documents that might show that LendingTree knew or should have known of NexTag's allegedly infringing activity on or about September 8, 2004 – the "Laches Critical Date." (Document No. 430, p.4).  LendingTree asserts that it "first became aware of the infringing NexTag system **on or around October 6, 2004**." (Document No. 436, p.5) (emphasis added).  NexTag has previously explained the critical timing as follows:

> LendingTree sued NexTag in this Court on September 8, 2010.  A presumption of laches arises where the defendant knew or should have known of the infringement more than six years prior to the filing of the suit.  Consequently, if LendingTree knew that NexTag

was in the mortgage lead generation business prior to September 8, 2004 (the "Critical Date"), a presumption of laches arises.

(Document No. 327, p.5).

To date, LendingTree has withheld certain documents which it contends are communications and/or work product subject to attorney-client privilege. See (Document No. 430-13, pp.2-91). NexTag contends that LendingTree "has waived privilege to any and all communications regarding when and how LendingTree and its General Counsel first became aware of NexTag's accused mortgage lead generation system," by affirmatively relying on the advice of its counsel to rebut NexTag's laches defense. (Document No. 430, p.4). According to NexTag, the "communications are critical to the case-dispositive issue of laches." Id. NexTag concludes that LendingTree is improperly wielding the attorney-client privilege as both a sword and a shield. Id.

NexTag notes that its Interrogatory Nos. 7 and 9 targeted discovery regarding LendingTree's alleged delay in bringing suit. (Document No. 430, p.6). Interrogatory No. 7 reads as follows:

> Describe the circumstances in which you first became aware of any NexTag product, service, or instrumentality that LendingTree contends infringes any patent asserted in this action, including the date(s) on which you first became aware of that NexTag product, service, or instrumentality, and identify all persons employed or retained by you who have information concerning your first awareness of that NexTag product, service, or instrumentality.

(Document No. 430-8, pp.3-4).

LendingTree then provided the following pertinent information in its First Supplemental Response To Interrogatory No. 7:

> LendingTree reiterates its objection to this Interrogatory on the grounds that it calls for information protected from discovery by the attorney–client privilege and/or attorney work product doctrine

and/or any other applicable privilege or immunity. **The existence of NexTag's infringing system was brought to the attention of Douglas Lebda by counsel for LendingTree on or around October 6, 2004. The communications with counsel related to when NexTag first became aware of the infringing NexTag system are protected by the attorney–client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity**.

(Document No. 430-8, pp.4-5) (emphasis added).

Interrogatory No. 9 requested the following:

> Describe in detail all facts that support, refute or otherwise relate to your contention that LendingTree is not barred or limited from any recovery under the doctrines of laches, license, estoppel, waiver, and/or unclean hands. In answering this interrogatory, include the source and current location of any information used to prepare your response, and the persons most knowledgeable about your response to this interrogatory.

(Document No. 430-8, p.8).

LendingTree responded in most pertinent part as follows:

> Laches requires, in part, that NexTag prove LendingTree delayed filing suit for an unreasonable and inexcusable length of time from the time LendingTree knew NexTag infringed its patent, and that the delay operated to the material prejudice or injury of NexTag. *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995). Laches cannot bar recovery for post-filing infringement of a patent. NexTag has not presented sufficient evidence to show that LendingTree delayed filing suit for an unreasonable and inexcusable length of time after LendingTree was aware of NexTag's infringement. *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371 (Fed. Cir. 2001) (noting a six-year presumption requirement for laches). Based on the six-year presumption for laches, the critical date for LendingTree having knowledge that NexTag's product infringed its patents is September 2004. LendingTree was not aware of NexTag's infringing product before this time. *See* LendingTree's Response to Interrogatory No. 7. NexTag has also failed to show that any delay on LendingTree's part materially prejudiced NexTag, and NexTag's conclusory, self-serving statements unsupported by evidence in its interrogatory responses do not show prejudice. Even if NexTag could show a delay of an unreasonable and inexcusable length of time and material prejudice, which it cannot,

5

> the equities of the parties would not favor application of the laches defense. **NexTag should withdraw this frivolous defense, which it has failed to support in discovery**.

(Document No. 430-8, p.10) (emphasis added).

NexTag now argues that LendingTree has taken "the untenable position that it was 'not aware' of NexTag's accused system until LendingTree's in-house counsel informed its CEO about NexTag 28 days after the Laches Critical Date. At the same time, LendingTree asserts privilege to withhold the documents showing how and when counsel learned of the NexTag system." (Document No. 430, p.7). NexTag further argues that the information it seeks is

> now squarely in play, namely, any communications related to the subject matter of LendingTree's investigation into NexTag's alleged infringement. LendingTree cannot give the "good," *i.e.*, the date its CEO received the advice from its General Counsel, and withhold the "bad," *i.e.*, other privileged communications tending to show that LendingTree knew or should have known about NexTag's alleged infringement around and prior to the Laches Critical Date.

Id.

NexTag also notes that when it deposed LendingTree's founder and CEO, Doug Lebda ("Lebda"), it specifically referred to Interrogatory No. 7, and questioned Lebda about "the circumstances of when and how LendingTree first became aware of NexTag's accused system." (Document No. 430, pp.7-8). According to NexTag, counsel for LendingTree instructed Lebda not to answer on the basis of attorney-client privilege, and Lebda followed those instructions. (Document No. 430, p.8).

NexTag now claims that LendingTree is avoiding the presumption of laches by relying on its communication with counsel on or around October 6, 2004, and asserting privilege over those same communication(s). (Document No. 430, pp.11-13). NexTag contends that LendingTree has implicitly waived "privilege by putting protected information 'at issue' in

litigation." (Document No. 430, p.10) (citing Small v. Hunt, 152 F.R.D. 509, 511-12 (E.D.N.C. 1994)).

> A number of courts have addressed the implied waiver of the attorney-client privilege under the "at issue" doctrine and one district court has developed a test for determining if the privilege has been waived. A party is treated as having waived its privileges if: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D.Wash. 1975). See also Remington Arms Company v. Liberty Mutual Insurance Company, 142 F.R.D. 408 (D.Del. 1992) (and cases cited therein).
>
> The "at issue" doctrine is based on notions of fairness and truth-seeking. Selective use of privileged information by one side may "garble" the truth. United States v. St. Pierre, 132 F.2d 837, 840 (2nd Cir. 1942), cert. dismissed as moot, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943) (Learned Hand, referring to the Fifth Amendment privilege). In addition, "[w]here a party injects part of a communication as evidence, fairness demands that the opposing party be allowed to examine the whole picture." Remington Arms, 142 F.R.D. at 413. Dean Wigmore has stated that "waiver is to be predicated ... when the conduct ... places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege." 8 J. Wigmore, Evidence § 2388, at 855 (McNaughton rev. 1961).

Small, 152 F.R.D. at 512.

NexTag specifically concludes that "[b]ecause LendingTree relied on communications with counsel to rebut NexTag's laches defense, LendingTree has waived privilege for any documents involving (i) LendingTree's knowledge or awareness of NexTag's accused system, and (ii) LendingTree's reasons for its delay in bringing suit." (Document No. 430, p.14). NexTag contends that its pending motion to compel only seeks "a narrow subset of the 1,724 documents withheld as privileged." Id.

7

In opposition, LendingTree argues that its interrogatory responses "do not reveal any attorney advice, let alone place any attorney advice 'in issue,' as the case law requires to find a waiver." (Document No. 436, p.5). LendingTree contends that "[t]o waive the attorney-client privilege, a party must, at a minimum, divulge the contents of a privileged communication." Id. LendingTree asserts that its interrogatory responses are no more revealing than its privilege log. Id. LendingTree also notes that NexTag did not claim at Lebda's deposition, or after receipt of the interrogatory responses, that attorney-client privilege had been waived. (Document No. 436, p.7).

According to LendingTree, there are two general approaches "to determine whether a client has impliedly waived the attorney-client privilege" and "NexTag cannot show waiver under either approach because LendingTree has not put the substance of a confidential communication at issue." (Document No. 436, p.8). LendingTree acknowledges that "[t]he Fourth Circuit has yet to expressly adopt either approach." (Document No. 436, p.9).

For the first approach, purportedly favored by NexTag, LendingTree identifies the Hearn v. Rhay, 68 F.R.D. 574 (E.D.Wash. 1975) decision. (Document No. 436, p.9). Hearn first articulated the three criteria quoted above in Small v. Hunt:

> A party is treated as having waived its privileges if: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

Small, 152 F.R.D. at 512 (quoting Hearn, 68 F.R.D. at 581). LendingTree contends that Hearn has been criticized by many sources "on the grounds that it is vague and does not afford

sufficient protection to the attorney-client privilege." (Document No. 436, p.9) (quoting Elat v. Emandopngoubene, 2013 WL 1146205, at *5 (D.Md. Mar. 18, 2013)).

An alternative approach is articulated by the Third Circuit in Rhone–Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 864 (3d Cir. 1994). Id. In Rhone, the Third Circuit opined as follows:

> Courts have found that by placing the advice in issue, the client has opened to examination facts relating to that advice. Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. **The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication**. . . .
>
> Thus, in a patent suit, where an infringer is alleged to have acted willfully, the advice of the infringer's lawyer may be relevant to the question of whether the infringer acted with a willful state of mind. However, the advice of the infringer's counsel is not placed in issue, and the privilege is not waived, unless the infringer seeks to limit its liability by describing that advice and by asserting that he relied on that advice. When the advice of counsel is asserted as a defense by the infringer, the patent owner may explore facts that would make it more probable than not that the infringer did not rely in good faith on that advice, including for example, what the advice was, when it was given, whether the alleged infringer's conduct suggests he had relied on the advice and whether he had knowledge of facts that would have led him to believe it would not be reasonable to rely on that advice.

Rhone, 32 F.3d at 863 (internal citations omitted) (emphasis added).

Although the Fourth Circuit has not expressly adopted either approach, LendingTree identifies a recent unpublished decision it contends provides guidance. (Document No. 436, p.9) (citing Shaheen v. WellPoint Cos., 490 Fed. Appx. 552 (4th Cir. 2012); Elat v. Emandopngoubene, 2013 WL 1146205 (D.Md. Mar. 18, 2013); and First South Bank v. Fifth Third Bank, N.A., 2013 WL 1840089 (D.S.C. May 1, 2013)). LendingTree asserts that the

9

"Shaheen case makes clear 'that the central inquiry in determining whether a party has impliedly waived the attorney-client privilege is whether the party affirmatively attempts to 'rely' on advice of counsel.''" (Document No. 436, p.10) (quoting Elat, 2013 WL 1146205, at *6).

LendingTree argues that although its interrogatory responses "provided the date of the communications (October 6, 2004), the people involved (Mr. Lebda and in-house counsel), and the general subject matter (NexTag's infringing system)," it "did not disclose the substance of any privileged communications and has not, therefore, 'taken the affirmative step in the litigation to place the advice of the attorney in issue.'" (Document No. 436, p.10) (quoting Rhone, 32 F.3d at 863). Relying on Rhone, LendingTree concludes that it has not placed its attorney advice in issue because "[n]o attorney advice has been revealed at all." (Document No. 436, p.11).

The undersigned notes that Rhone specifically states that "[t]he advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." Rhone, 32 F.3d at 863 (citing North River Insurance Company v. Philadelphia Reinsurance Corporation, 797 F.Supp. 363, 370 (D.N.J. 1992); Pittston Company v. Allianz Insurance Co., 143 F.R.D. 66, 71 (D.N.J. 1992)).

The court in North River Ins. Co. opined that

> the "in issue" doctrine should be construed narrowly to create an implied waiver of the attorney-client privilege only when a party puts "in issue" the *contents* of an attorney-client communication. Remington Arms, 142 F.R.D. at 415. This will occur only when the party has asserted a claim or defense that he intends to prove by disclosure of an attorney-client communication. Id. ("If the information is actually required for a truthful resolution of the issue ... which the party has raised ..., the party must either waive the attorney-client privilege as to that information or it should be prevented from using the privileged information to establish the elements of the case").

North River Ins. Co., 797 F.Supp. at 370; see also, Pittston Co., 143 F.R.D. at 71 ("The 'in issue' doctrine is operative when the party has asserted a claim or defense that he intends to prove by use of the privileged materials.").

In this lawsuit, Lending Tree asserts that NexTag's laches defense is "frivolous" and should be withdrawn, based on LendingTree's position that it did not know about NexTag's infringing activity until on or around October 6, 2004, after the Laches Critical Date of September 8, 2004. (Document No. 430-8, p.10). In support of its position that the laches defense is inapplicable here, LendingTree has simply stated that

> [t]he existence of NexTag's infringing system was brought to the attention of Douglas Lebda **by counsel for LendingTree** on or around October 6, 2004. The **communications with counsel related to when NexTag first became aware of the infringing NexTag system are protected by the attorney–client privilege** and/or attorney work product doctrine and/or any other applicable privilege or immunity.

(Document No. 430-8, pp.4-5) (emphasis added).

LendingTree's interrogatory responses cited above, as well as Lebda's deposition testimony, strongly suggest that critical evidence of when LendingTree became aware of NexTag's allegedly infringing activity is included in the privileged communication from LendingTree's counsel. Id. Moreover, LendingTree is essentially telling NexTag, and the Court, that NexTag's laches defense is "frivolous," but you have to trust us, because exactly when and how we found out about the alleged infringement is privileged.[1] It appears that LendingTree is relying on its attorney-client communication to rebut NexTag's laches defense, while withholding all details of such communication.

---

[1] LendingTree has stated that it found out about the alleged infringement "on or around October 6, 2004." (Document No. 430-8, p.4). It is unclear how LendingTree defines "around October 6, 2004," or whether "around" might include dates before and/or after September 8, 2004.

Although this case presents a close call, the undersigned is inclined to find that LendingTree placed the advice of its attorney in issue – the advice that NexTag's system was infringing upon LendingTree's patent. See (Document No. 430-8, pp.3-5). LendingTree asserts that NexTag's affirmative defense of laches is without merit, based primarily on its disclosure and description of attorney-client communication that occurred "on or around October 6, 2004." See Rhone, 32 F.3d at 863. Thus, it appears that LendingTree placed that advice in issue. Id. Based on LendingTree's interrogatory responses, the only persons employed or retained by LendingTree who have information about LendingTree's first awareness of NexTag's alleged infringement are an unidentified "counsel for LendingTree" and Lebda. (Document No. 430-8, pp.4-5). As noted above, Lebda has refused to elaborate on what and when he knew about NexTag's alleged infringement, asserting attorney-client privilege. (Document No. 430-9, p.4).

In addressing the issue of attorney-client privilege and waiver, this Court has previously opined:

> The attorney-client privilege is intended to encourage those who find themselves in actual or potential legal disputes to be candid with lawyers who advise them, and is one of the oldest recognized privileges for confidential communications. . . . The attorney-client privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." Upjohn, 449 U.S. at 389. . . .
>
> When the privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure. However, since it impedes the full and free discovery of the truth, the attorney-client privilege is narrowly construed. . . .
>
> It is well-settled in the Fourth Circuit that "[t]he proponent of the privilege must establish ... that the privilege was not waived." In re Grand Jury Subpoena, 204 F.3d at 522. Although there is no published Fourth Circuit case law on whether a party can waive the privilege by placing its attorney's knowledge of facts

> or communications in issue, three other circuits have concluded that the privilege can be so waived. See Frontier Refining, Inc. v. Gorman–Rupp Co., Inc., 136 F.3d 695, 699–700 (10th Cir. 1998) ("litigant waives the attorney-client privilege if, and only if, the litigant directly puts the attorney's advice at issue in the litigation"); Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 863–64 (3d Cir. 1994); and Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992) (privilege waived where a party claimed that its tax position was reasonable because it was based upon advice of counsel). However, these circuits are divided as to the exact standard for the waiver of privilege. Rhone, 32 F.3d at 864.

Cincinnati Ins. Co. v. Zurich Ins. Co., 198 F.R.D. 81, 87 (W.D.N.C. 2000) (internal citations omitted).

LendingTree contends that "NexTag seeks privileged communications despite the fact that LendingTree has not revealed any advice of counsel, let alone relied upon the advice of counsel to rebut NexTag's laches defense." (Document No. 436, p.12). The undersigned disagrees. LendingTree has clearly stated that the existence of the allegedly infringing system was brought to its attention "by counsel" and that those communications are protected by "the attorney client privilege." (Document No. 430-8, pp.4-5). Without more information from LendingTree, the undersigned finds LendingTree is relying on the "advice of counsel" to rebut NexTag's laches defense.

Assuming the relevant question is, as LendingTree suggests, "what facts the party knew and when," the answer to that question is completely shrouded by LendingTree's assertion of attorney-client privilege. See (Document No. 436, p.12) (quoting Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co., 1994 WL 510043, at *12 (S.D.N.Y. 1994) (citing Allen v. West Point–Pepperell Inc., 848 F.Supp. 423, 431 (S.D.N.Y.1994))). The undersigned notes that Arkwright goes on to opine as follows:

13

> Invasion of the attorney-client privilege is not necessary; rather, the discovering party should simply inquire directly of the other party as to its knowledge of relevant facts, which must be disclosed. . . . Invasion of the privilege may, however, be warranted where the specific content of legal advice received must be shown to prove a claim or a defense.

Arkwright Mut. Ins. Co., 1994 WL 510043, at *12 (citing United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (defendant waived attorney-client privilege where his good faith defense in securities fraud prosecution placed his knowledge of the legality of transactions, and accordingly his communications with counsel, directly at issue)).

Here, LendingTree's rebuttal of the laches defense has placed its communications with counsel directly at issue. The undersigned finds that NexTag has appropriately sought facts regarding LendingTree's knowledge of NexTag's allegedly infringing behavior, rather than legal opinions of LendingTree's counsel. To date, LendingTree has declined to fully respond to NexTag's inquiries because it contends that it became aware of the alleged infringement through counsel. (Document No. 430-8, pp.4-5; Document No. 430-9, pp.3-4). On this point, the Rhone court emphasized that

> Facts are discoverable, the legal conclusions regarding those facts are not. A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer.

Rhone, 42 F.3d at 864.

Based on the foregoing, the undersigned finds that LendingTree should be required to produce the documents requested by the instant "… Motion To Compel…" (Document No. 426). Consistent with Conkling v. Turner, 883 F.2d 431, 435 (5th Cir. 1989), it appears that NexTag has presented a "cabined inquiry," regarding when LendingTree knew of the existence of NexTag's allegedly infringing product, that will likely provide information relevant to NexTag's

affirmative defense. To the extent responsive documents also contain privileged information that is unrelated to information requested by the "… Motion To Compel…," LendingTree may redact as necessary.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Defendant NexTag, Inc.'s Motion To Compel Production Of Documents Subject To Waiver Of Privilege" (Document No. 426) is **GRANTED**. Plaintiff LendingTree, LLC shall produce the requested documents on or before **December 13, 2013**.

**SO ORDERED**.

Signed: December 5, 2013

David C. Keesler
United States Magistrate Judge

SEALED DOCUMENT with access to All Parties/Defendants.