| | | |
|---|---|---|
| **LENDINGTREE, LLC, ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | ORDER |
| | ) | |
| **ZILLOW, INC. and NEXTAG, INC.;** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

THIS MATTER is before the Court on numerous motions filed by the parties following a jury trial in this case. In sum, Plaintiff has moved for Judgment as a Matter of Law (Docs. Nos. 596, 597); Defendant Zillow[1] has moved for Sanctions pursuant to Rule 11 (Doc. No. 582); all remaining Defendants[2] have moved for attorneys' fees (Docs. Nos. 577, 584, 587, 603, 604, 619); and Plaintiff has requested leave to file a surreply to Zillow's motion for attorneys' fees (Doc. No. 644). These motions are ripe for disposition. For the reasons that follow, Defendant NexTag's motion for attorneys' fees is DENIED IN PART and GRANTED IN PART, and all other motions are DENIED.

---

[1] Defendant Adchemy, Inc., who shared representation with counsel for Zillow, also filed a Motion for Sanctions pursuant to Rule 11 (Doc. No. 581). Prior to the instant Order ruling on all post-trial motions, Plaintiff LendingTree and Defendant Adchemy settled all matters in controversy among them. Adchemy and LendingTree subsequently filed a Joint Stipulation of Voluntary Withdrawal of all motions between and against these two parties. (Doc. No. 621). Accordingly, Adchemy's motion for sanctions is now moot and is dismissed for that reason.

[2] Defendant Adchemy, Inc., also joined Zillow in their Motions for Attorneys' Fees (Docs. Nos. 577, 603). As explained in footnote 1, that portion of these motions relating to Adchemy are now moot and is dismissed for that reason.

# I. Background

Four years ago, LendingTree filed this patent infringement case alleging that Adchemy, Inc.; NexTag, Inc.; Quinstreet Media, Inc.; Quinstreet, Inc.; Zillow, Inc., and Leadpoint, Inc., d/b/a SECURERIGHTS infringed on U.S. Patent No. 6,611,816 (the '816 Patent"), held by LendingTree. LendingTree further accused Zillow of infringing U.S. Patent No. 6,385,594 ("the '594 Patent"), also held by LendingTree. Defendants denied the infringement allegations and asserted various defenses. Relevant to this Order, Zillow and Adchemy asserted anti-trust claims against LendingTree, and NexTag asserted laches and estoppel as defenses to LendingTree's infringement claims.

Several Defendants settled with LendingTree prior to trial, but three Defendants—Zillow, Adchemy, and NexTag—proceeded to a jury trial. The Court also conducted a bench trial on NexTag's laches and estoppel defenses. The Court need not detail all of the evidence presented during trial, but in pertinent part, provides the following summation of facts for purposes of this Order.

## A. The Disputed Technology

LendingTree's patents are both titled "Method and Computer Network for Co-Ordinating a Loan over the Internet." The claims of the patents are directed toward that end. LendingTree filed this patent case alleging the Defendants infringed upon the patents by operating various websites that connect Internet borrowers and mortgage lenders. During claim construction, the Court heard the arguments of counsel and essentially agreed with Defendants' proposed constructions, subject to a few modifications. In the Court's view, Defendants' constructions more appropriately defined the claimed process, whereas LendingTree's proposed constructions sought to expand the breadth of the patented claims. As explained in the Court's oral rulings

during the claim construction hearing, the Court interpreted the claims in accordance with applicable law governing claim construction.

Following claim construction, the parties engaged in discovery, some of which was intensely contested and required Court intervention. All parties moved for summary judgment, and the Court denied those motions.

### B.     Trial and Verdict

This case proceeded to trial, resulting in jury verdicts in favor of Defendants on LendingTree's infringement claims and in favor of LendingTree on Defendants' anti-trust claims. The jury also found that clear and convincing evidence showed both patents to be invalid because they failed to identify the correct inventors. Immediately following return of the jury verdict, LendingTree sought – for the first time – a special interrogatory to the jury as to the identification of the proper inventors. The Court denied this motion. LendingTree also renewed its motions for judgment as a matter of law, which the Court also denied. These rulings, as well as the right to recover attorneys' fees, are the bulk of the motions now before the Court.

## II. ANALYSIS

There are numerous motions pending before the Court, and the Court will address them in turn, albeit not necessarily in the order in which they were filed.

### A.     LendingTree's Motions for Judgment as a Matter of Law

LendingTree renews its motion for judgment as a matter of law ("JMOL") under Federal Rule of Civil Procedure 50, and in the alternative, moves for a new trial under Federal Rule of Civil Procedure 59, because the patents-in-suit are not invalid for failing to identify the correct inventors. LendingTree also moves pursuant to Rule 59(a) for a new trial on infringement, willful infringement, and damages because LendingTree contends it was prevented from

developing the full evidentiary record it was entitled to develop under the Court's claim construction and that, consequently, allowing the verdict to stand results in a miscarriage of justice.

It is well-settled that in patent cases, the law of the regional circuit governs a motion for JMOL under Rule 50(b). See SynQor, Inc. v. Artesyn Techs., 709 F.3d 1365, 1373 (Fed.Cir.2013) ("This court reviews the grant or denial of a motion for JMOL under the law of the regional circuit . . . ."). In the Fourth Circuit, the district court may grant judgment as a matter of law when it finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-moving party." Dotson v. Pfizer, Inc., 558 F.3d 284, 292 (4th Cir. 2009). A jury verdict will not be disturbed if sufficient evidence exists for a reasonable jury to find in the non-movant's favor. Id. "A trial court may not appropriately enter [JMOL] unless it concludes, after consideration of the record as a whole in the light most favorable to the non-movant, that the evidence presented supports only one reasonable verdict, in favor of the moving party." Id. (internal quotation marks and citations omitted) (alteration in original); see also Morpho Detection, Inc. v. Smiths Detection, Inc., 957 F. Supp. 2d 655, 659 (E.D. Va. 2013) (citing Price v. City of Charlotte, 93 F.3d 1241, 1249 (4th Cir.1996) ("Because federal courts do not directly review jury verdicts, constrained, as we are, by the Seventh Amendment, the [proponent of a JMOL motion] bears a hefty burden in establishing that the evidence is not sufficient to support the [jury's findings]."); cf. Tights, Inc. v. Acme–McCrary Corp., 541 F.2d 1047, 1055–56 (1976) (indicating in a patent case decided before the creation of the Federal Circuit that "the rules governing appellate review of patent cases," including the rules governing a motion for a directed verdict, are "no different than in other types of civil litigation")).

In patent cases, the law of the regional circuit also governs a motion for a new trial. Bettcher Industries, Inc. v. Bunzl USA, Inc., 661 F.3d 629, 638 (Fed.Cir. 2011). Rule 59(a) states that a district court "may, on motion, grant a new trial on all or some of the issues—and to any party . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(A). In the Fourth Circuit, a new trial will be granted under Rule 59(a) if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Cline v. Wal–Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir.1998) (quoting Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir.1996)). The decision to grant or deny a new trial rests within the sound discretion of the district court. Id.

Unlike a Rule 50(b) motion, "[u]nder Rule 59 of the Federal Rules of Civil Procedure, a trial judge may weigh the evidence and consider the credibility of the witnesses and, if he finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial." Poynter by Poynter v. Ratcliff, 874 F.2d 219, 223 (4th Cir.1989) (citing Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 891–92 (4th Cir.1980); Williams v. Nichols, 266 F.2d 389, 392 (4th Cir.1959)).

### 1. Invalidity for Improper Inventorship

LendingTree moves for the Court to set aside the jury's verdict that the patents-in-suit are invalid for incorrect inventorship under 35 U.S.C. § 256 because the jury did not have sufficient evidence to legally support an invalidity verdict. LendingTree argues that Defendants presented no evidence that Richard Stiegler (who is named as an inventor on the patents) was *not* an

inventor of any claim of the patents-in-suit. (Doc. No. 596). Instead, LendingTree contends the evidence only showed, if at all, that Jamey Bennett (whose name does not appear as an inventor on the patents) should be added as an inventor to the patents-in-suit.

Defendants disagree and oppose Plaintiff's motion for several reasons: (1) the jury had sufficient evidence to support its decision of invalidity; (2) the jury's verdict does not specify the particular error or errors on which the jury allegedly based its determination, and LendingTree did not timely request a special verdict on this issue; (3) LendingTree has failed to establish that the inventorship error should be corrected by this Court; and (4) LendingTree's request to add Mr. Bennett as an inventor is barred by the doctrine of laches.

The Court summarily agrees with Defendants' arguments that more than sufficient evidence supports the jury's verdict on improper inventorship, including the evidence directly related to Mr. Bennett's participation in developing the patented process. LendingTree has not satisfactorily demonstrated that the evidence presented, taken in the light most favorable to Defendants, supports only one reasonable verdict in LendingTree's favor. Nor has LendingTree established that the verdict is against the clear weight of the evidence, based on false evidence, or will result in a miscarriage of justice. Accordingly, LendingTree's Rule 50 and Rule 59 motions on this basis are DENIED.

This is not to say that the failure to identify Mr. Bennett on the patents is the *sole* basis for the jury's finding of invalidity. Based on the evidence currently before the Court, there are several combinations of inventors that the jury could have reasonably concluded should be listed on the patent, including, but not limited to: (1) Mr. Lebda acting alone; (2) Mr. Lebda and Mr. Bennett; or (3) Mr. Lebda, Mr. Bennett, and Mr. Stiegler. In light of these multiple, plausible

options, coupled with LendingTree's failure to timely request identification of the inventors by the jury, LendingTree now moves the Court to correct inventorship under 25 U.S.C. §256.

According to the relevant part of Section 256:

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question *may* order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256 (emphasis added).

The Federal Circuit has interpreted the language from § 256 as giving courts the power to "correct . . . inventorship when all parties are given notice and an opportunity to be heard." Fina Technology, Inc. v. Ewen, 265 F.3d 1325, 1326 (2001) (citing Stark v. Advanced Magnetics, Inc., 119 F.3d 1551, 1553 (Fed. Cir. 1997)). Section 256 *permits* district court jurisdiction over disputes of inventorship. Bd. of Educ. ex rel. Bd. of Trustees of Florida State Univ. v. Am. Bioscience, Inc., 333 F.3d 1330, 1337 (Fed. Cir. 2003); MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1570 (Fed. Cir. 1989). Thus, § 256 authorizes federal courts to resolve such errors; however, the plain language of the statute falls short of *requiring* the federal court to do so. Furthermore, the Court is unconvinced that the Panni v. Iolab, 155 F.3d 1344, (Fed. Cir. 1998), case cited by LendingTree *mandates* that this Court resolve inventorship disputes, particularly whereas here, LendingTree had every opportunity to include a special verdict form asking the jury to identify the correct inventors upon a finding of invalidity for that reason.

Other district courts have acknowledged that section 256 expressly allows both the PTO and the courts to correct inventorship errors in patents, and that improper inventorship may be resolved by either the PTO *or* a court. Stevens v. Broad Reach Companies, L.L.C., 05-647-CV-W-GAF, 2006 WL 15563113 (W.D. Mo. May 31, 2006) ("Section 256 explicitly empowers both

the Director of the PTO and the federal courts to remedy inventorship errors in issued patents."); Mas-Hamilton Grp. v. LaGard, Inc., 21 F. Supp. 2d 700, 711 (E.D. Ky. 1997) aff'd, 156 F.3d 1206 (Fed. Cir. 1998) ("A patent invalid for improper inventorship may be corrected by the Patent Office or a court."). Therefore, the Court, in its discretion, may or may not exercise jurisdiction over an inventorship dispute. If the Court does not exercise jurisdiction over the inventorship dispute, the inventorship dispute may be resolved by the PTO.

The Court declines to resolve this issue for several reasons. As already discussed, LendingTree did not ask the jury to decide the issue of correct inventorship. Also, based on the evidence currently before the Court, there are several combination of inventors that the jury had could have reasonably concluded regarding identification of the proper inventor. Therefore, the Court in its discretion, declines to make a determination as to inventorship.

For the foregoing reasons, Plaintiff's Motion for Judgment of No Invalidity for Improper Inventorship is DENIED. This ruling is without prejudice to the parties' ability to reraise any of the other arguments before the PTO.

### 2. New Trial on Infringement, Willful Infringement, and Damages

LendingTree also moves for a new trial on its claims against Zillow and NexTag for infringement, willful infringement, and damages. The gravamen of LendingTree's argument is that the Court should grant a new trial to prevent a miscarriage of justice.

First, LendingTree argues the Court's claim construction was unsettled until after the close of evidence, which severely prejudiced LendingTree so as to justify a new trial. To the contrary, the Court consistently rejected LendingTree's multiple attempts to broadly interpret the contested patent claims – during claim construction, post-claim construction in a motion to reconsider, during various pretrial proceedings including summary judgment, and at trial. Now,

LendingTree again attempts to argue that the Court's claim constructions were either unclear or shifting. The Court explained during trial that its claim constructions have never varied.

To support its assertion, LendingTree alleges error by the inclusion of the phrase "i.e., a contract" in the page showing claim construction in the juror notebooks. This error, however, was remedied by replacing the page with another page showing the precise claim construction as issued by the Court. This replacement page removed the legal phrase "i.e., a contract," which was not originally included in the Court's claim construction. Importantly, LendingTree prepared the juror notebooks and admittedly "allowed Defendants to insert" the language it later contested mid-trial. (Doc. No. 630, p. 13). LendingTree renews these arguments, already addressed at trial, and now contends that the replacement of that page occurred too late in trial. The Court disagrees, as the substitution of the actual page took place promptly after *LendingTree* submitted the replacement page, and in any event well-before closing arguments, jury instructions (which also included the Court's claim construction chart), and submission of the case to the jury. LendingTree has simply failed to show how any error, which was timely remedied, prejudiced its case.

Likewise, LendingTree has not shown that manifest injustice resulted because of the Court's jury instruction that the words "mutual assent" meant "binding promise." As the Court has explained on multiple occasions, this is precisely the same narrow meaning the Court gave when construing the claim term "offer" during the claim construction hearing. LendingTree acknowledged as much in their motion for reconsideration of the claim construction. The Court's jury instruction did nothing to further limit, modify, or otherwise vary the original meaning of the Court's claim construction. The instruction's only purpose was to define a legal term used in the Court's claim construction using non-legal terms that the jury could understand.

While LendingTree's infringement arguments have shifted throughout this case, Defendants have steadfastly maintained that their systems could not possibly infringe because the systems did not mirror the claims as defined by the Court. Defendants obviously understood the claim terms as construed by the Court, and their arguments as to noninfringement did not shift throughout the case, which evidences the fact that claim construction never changed. It appears that LendingTree recognized the Court's narrow construction from the outset and realized the construction made it difficult to prove infringement. As a result, LendingTree attempted time and again to test and broaden the limitations interposed by the Court's construction.[3] Any confusion over the claim terms occurred not because of the Court, but as a result of LendingTree's failure to accept the Court's definitions and because of LendingTree's repeated attempts to relitigate those definitions. This misapplication of claim construction culminated during LendingTree's proffered expert testimony, where it became apparent to the Court that LendingTree was attempting to overstep the bounds set by claim construction. LendingTree's trial counsel responsible for direct examination of its experts, who had not been present in the courtroom for the numerous discussions between counsel and the Court regarding the confines of claim construction, appeared flustered with the inability to elicit admissible testimony applying claim construction. This does not constitute manifest injustice – it simply reflects a weak case and a misapplication of claim construction to the case at bar. This is insufficient to warrant a new trial.

---

[3] The Court notes, as it did during trial and in its ruling on patentable subject matter under 35 U.S.C. §101, that the Court's narrow claim construction from the beginning likely saved LendingTree from an unfavorable ruling under §101. Had the Court adopted LendingTree's claim constructions, which in the Court's view would have significantly broadened the patented claims, LendingTree would have faced significant challenges to overcoming Defendants' motions for summary judgment on invalidity. See generally Alice Corp. Pty. v. CLS Bank Int'l, 134 S. Ct. 2347, 2357, 189 L. Ed. 2d 296 (2014).

Even presuming error occurred by giving the instruction regarding a "binding promise," LendingTree has not shown prejudice sufficient to warrant a new trial, particularly in light of the multitude of evidence, including expert testimony, presented by Defendants to show noninfringement.

LendingTree continues its motion for a new trial by suggesting other claim terms were improperly construed by the Court. In sum, LendingTree suggests that the Court's claim construction precluded LendingTree from soliciting certain testimony, presenting specific evidence of infringement, and objecting to Defendants' arguments and evidence. This, however, is precisely where the legal rulings from claim construction and the Rules of Evidence convene.

> [A] patent includes one or more claims, which particularly point out and distinctly claim the subject matter which the applicant regards as his invention. A claim covers and secures a process, a machine, a manufacture, a composition of matter, or a design, but never the function or result of either, nor the scientific explanation of their operation. The claim defines the scope of a patent grant, and functions to forbid not only exact copies of an invention, but products that go to the heart of an invention but avoids the literal language of the claim by making a noncritical change . . . .

Markman v. Westview Instruments, Inc., 517 U.S. 370, 373-74 (1996) (internal citations and quotations omitted). "It is the words of the claim that define the scope of the patent." Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc., 554 F.3d 1010, 1027 (Fed. Cir. 2009) (citing Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)). The Court repeatedly rejected LendingTree's proposed claim construction, and the Court's claim construction governed the admissibility of evidence at trial. Simply, any argument that contradicted the Court's claim construction was precluded as irrelevant. See generally Automated Merch. Sys., Inc. v. Crane Co., 3:03-CV-88 L, 2012 WL 695676 (N.D.W. Va. Mar. 1, 2012); Electro-Mech. Corp. v. Power Distribution Products, Inc., 1:11CV00071, 2013 WL 1859229 (W.D. Va. Mar. 13, 2013).

Because the Court's claim constructions formed the basis for the evidentiary rulings to which LendingTree yet again now complains, the Court declines to grant a new trial.

In sum, for the reasons explained above, as well as the reasons set forth throughout trial when these arguments were also raised, the Court has not budged in its claim construction. The fact this claim construction ultimately proved fatal to LendingTree's infringement claims does not provide a sufficient basis for a new trial.

LendingTree next argues that testimony from other patent infringement cases involving LendingTree was inadmissible, confused the jury, and prejudiced LendingTree. This testimony, however, was elicited to impeach the witnesses by using prior inconsistent testimony. The prior claim constructions in those previous cases were irrelevant. Claim construction aside, it was relevant for the jury in the case at bar to hear how LendingTree witnesses had testified, under oath, concerning their patented systems and processes in order to evaluate the credibility of the testimony in this case. Indeed, a witness's inconsistent testimony in a trial over a patented method—even though not identical and not necessarily related—goes to the heart of assessing credibility. LendingTree was free on redirect to explain away the inconsistencies, yet it failed to avail itself of that option. The Court also rejects the argument that such testimony unfairly prejudiced LendingTree.

LendingTree also contends that NexTag's argument regarding circumstantial evidence of noninfringement severely and unjustly prejudiced LendingTree's infringement case because it improperly suggested the parties' intent was relevant to a finding of infringement. The Court is unconvinced by LendingTree's argument here. As an initial matter, as NexTag points out in its brief, the Federal Circuit permits circumstantial evidence to be used to prove infringement.

> A patentee may prove direct infringement or inducement of infringement by either direct or circumstantial evidence. <u>Moleculon Research Corp. v. CBS, Inc.</u>,

> 793 F.2d 1261, 1272 (Fed. Cir. 1986). There is no requirement that direct
> evidence be introduced, nor is a jury's preference for circumstantial evidence over
> direct evidence unreasonable per se. See Fuji Photo Film Co. v. Jazz Photo Corp.,
> 394 F.3d 1368, 1374 (Fed. Cir. 2005); Moleculon Research, 793 F.2d at 1272
> (noting "it is hornbook law that direct evidence of a fact is not necessary"); see
> also Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d
> 20 (1960) ("Circumstantial evidence is not only sufficient, but may also be more
> certain, satisfying and persuasive than direct evidence.").

Liquid Dynamics Corp. v. Vaughan Co., 449 F.3d 1209, 1219 (Fed. Cir. 2006). To allow circumstantial evidence to prove infringement, but not to rebut those accusations, is illogical. Accordingly, the admissibility of this evidence did not result in a miscarriage of justice.

Finally, and importantly, the Court notes that the bulk of LendingTree's arguments for a new trial are the result of invited error, either by LendingTree, its witnesses, or its counsel. In this Order, the Court has attempted to summarily reiterate its reasons for its prior rulings, most of which fully addressed the issues raised by the instant motion. By briefly addressing the merits of each argument, however, the Court does not condone what appears to be, in large part, multiple occasions where LendingTree either opened the door or failed to object to the evidence and arguments it now contends constitute a miscarriage of justice and justify a new trial. See Cordis Corp. v. Medtronic Ave, Inc., 511 F.3d 1157, 1172, supplemented sub nom. Cordis Corp. v. Boston Scientific Corp., 275 F. App'x 966 (Fed. Cir. 2008) ("The instruction therefore either constitutes 'invited error' that is not reviewable at all, or at most is subject to review under the 'plain error' standard.") (citations omitted).

For these reasons, as well as those stated on the record during trial and immediate post-trial proceedings, LendingTree's motion for a new trial on infringement, willful infringement, and damages is DENIED.

**B.     Motions for Attorneys' Fees**

Both parties have moved for attorneys' fees, and while the facts and circumstances surrounding their arguments differ, the applicable case law is the same. Therefore, the Court first sets forth the standard by which these motions are reviewed, which has been recently explained by the Supreme Court. The Court will subsequently address the parties' individual motions.

### 1. Applicable Standard

Defendants move for attorneys' fees pursuant to 35 U.S.C. § 285, which succinctly provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." In other words, to receive attorneys' fees under § 285, a party must demonstrate: (1) it is the prevailing party; and (2) the case is "exceptional." The Court notes that these two elements are mutually exclusive: LendingTree's loss at trial does not, standing alone, qualify this case as "exceptional." Thus, while it is undisputed that Zillow and NexTag are the prevailing parties here, the Court must separately consider whether this case qualifies as "exceptional" as that term is used in the statute.

The definition of an "exceptional" case has historically varied under shifting Federal Circuit precedent. In the recent case of Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1753-54, 188 L. Ed. 2d 816 (2014), the Supreme Court explained the evolution of "exceptional" under § 285:

> For three decades after the enactment of § 285, courts applied it—as they had applied § 70—in a discretionary manner, assessing various factors to determine whether a given case was sufficiently "exceptional" to warrant a fee award. In 1982, Congress created the Federal Circuit and vested it with exclusive appellate jurisdiction in patent cases. In the two decades that followed, the Federal Circuit, like the regional circuits before it, instructed district courts to consider the totality of the circumstances when making fee determinations under § 285. In 2005, however, the Federal Circuit abandoned that holistic, equitable approach in favor of a more rigid and mechanical formulation.

(citations omitted).  In <u>Octane Fitness</u>, the Supreme Court clearly rejected the Federal Circuit's most recent adaptation of "exceptional" as "unduly rigid," noting that "it impermissibly encumbers the statutory grant of discretion to district courts."  134 S. Ct. at 1755 (<u>abrogating</u> <u>Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.</u>, 393 F.3d 1378 (2005)).  In so doing, the Supreme Court held:

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.  District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.  As in the comparable context of the Copyright Act, "'[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

<u>Octane Fitness</u>, 134 S. Ct. at 1756.

The Court offered some examples of instances that might qualify as "exceptional."  A "district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."  <u>Octane Fitness</u>, 134 S. Ct. at 1757.  Additionally, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."  <u>Id</u>.    The <u>Octane Fitness</u> Court suggested district courts consider several "nonexclusive" factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  134 S.Ct. at 1756, n.6 (quoting <u>Forgerty v. Fantasy</u>, 510 U.S. 517, 534, n.19 (1994)).

In the aftermath of <u>Octane Fitness</u>, district courts have repeatedly considered these nonexclusive actors when deciding whether a case is satisfactorily "exceptional."  <u>See</u>

Chalumeau Power Sys. LLC v. Alcatel-Lucent, CV 11-1175-RGA, 2014 WL 4675002, at *3 (D. Del. Sept. 12, 2014) (awarding attorneys' fees after finding the plaintiff's lawsuit, including the plaintiff's claim construction positions, as a whole, to be frivolous, and holding that the motivation for filing "a frivolous lawsuit" was for the "sole purpose of extorting a settlement fee"); Precision Links, Inc. v. USA Products Group, Inc., 2014 WL 2861759 (W.D.N.C. June 24, 2014) (awarding partial attorneys' fees because the plaintiff's litigating position with respect to two claims was objectively baseless, notwithstanding fact that infringement theory as to another claim was not objectively baseless); Yufa v. TSI Inc., 09-CV-01315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014) (awarding attorneys' fees and finding case exceptional, in part because the plaintiff "testified that he filed this action without purchasing or testing any of [the] accused products to determine if they infringed . . . [which] suggests that [the plaintiff] did not conduct an adequate investigation prior, at the very least, to filing his first amended complaint"); Romag Fasterners, Inc. v. Fossil, Inc., 3:10CV1827 JBA, 2014 WL 4073204, at *4 (D. Conn. Aug. 14, 2014) ("Although Defendants' arguments with respect to non-infringement were not entirely groundless, the Court concludes that Defendants' pursuit of its indefiniteness invalidity defense, and its failure to formally withdraw its remaining invalidity defenses until after the close of evidence [when the plaintiff moved for judgment as a matter of law] weigh in favor of an award of fees in this case."); Ohio Willow Wood Co. v. Alps S., LLC, 2:04-CV-1223, 2014 WL 4775374, at * 47 (S.D. Ohio Sept. 24, 2014) (awarding attorneys' fees; "Given the finding of inequitable conduct and the fact that [the defendant] prevailed on [the plaintiff's] infringement claims, the Court concludes that this case is exceptional within the meaning of 35 U.S.C. § 285.").

Notably, however, none of these factors is *required* for an award of attorneys' fees under § 285. <u>Octane Fitness</u>, 134 S. Ct. at 1757. "Under the [<u>Octane Fitness</u>] standard, no bright-line rules define the parameters of what is exceptional, and no single element (such as baselessness or sanctionability) is dispositive." <u>EON Corp. IP Holdings LLC v. Cisco Sys. Inc.</u>, 12-CV-01011-JST, 2014 WL 3726170 (N.D. Cal. July 25, 2014) (citation omitted). Put another way, "it is within a court's discretion to find a case 'exceptional' based upon 'the governing law and the facts of the case,' irrespective of whether the losing party is culpable." <u>Fair Wind Sailing, Inc. v. Dempster</u>, 13-3305, 2014 WL 4358471, at *9 (3rd Cir. Sept. 4, 2014).

In applying <u>Octane Fitness</u> and affirming an award of attorneys' fees for a prevailing plaintiff against the patent-holder defendant, the Federal Circuit recently explained:

> [The defendant] argues that the district court's fee calculation was not sufficiently rooted in the conduct that the court found exceptional. The district court, [the defendant] contends, should have limited the award to the costs that [the plaintiff] incurred in responding to specific acts of litigation misconduct. We decline, however, to require such granularity from the district court, particularly because it is the "totality of the circumstances," and not just discrete acts of litigation conduct, that justify the court's award of fees.

<u>Homeland Housewares, LLC v. Hastie2Market, LLC</u>, __ Fed. Appx. __, 2014 WL 4400184, at *3 (Fed. Cir. Sept. 8, 2014) (citing <u>Octane</u>, 134 S.Ct. at 1756). In sum, the totality of the circumstances, and not just specific conduct, warrants the award of attorneys' fees.

After explaining the "exceptional" standard, the High Court also rejected the Federal Circuit's requirement of "clear and convincing evidence," and instead held that a patent litigant need only establish its entitlement to fees under § 285 by a preponderance of the evidence. <u>Id</u>. at 1758 ("Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one. Indeed, patent-infringement litigation has always been governed by a preponderance of the evidence standard . . . .") (citations omitted).

Keeping these principles in mind, the Court turns to the governing law and facts of the case at bar.

### 2.    Zillow's Motion for Attorneys' Fees

Zillow argues this case is exceptional because LendingTree pursued meritless, frivolous claims, particularly in light of the Court's claim construction, and because LendingTree litigated this case in an unreasonable manner.  The Court addresses these arguments in turn.

### a.  Substantive Strength of the Claims

Zillow contends LendingTree's disregard for and attempts to relitigate claim construction demonstrate the meritless nature of LendingTree's case.  While the Court does not condone counsel's repeated attempts to reargue claim construction, the Court does not find the case between LendingTree and Zillow to be exceptional based on the totality of the circumstances.

"[T]he Supreme Court has instructed that fee award determinations require a review of the substantive strength of the parties' litigation positions," which permits a consideration of the parties' arguments at trial and motions for judgment as a matter of law.  Apple Inc. v. Samsung Electronics Co., 11-CV-01846-LHK, 2014 WL 4145499, at *3 (N.D. Cal. Aug. 20, 2014) (citing Octane Fitness, 134 S. Ct. at 1756 ("an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position")).[4]

Here, Zillow's request for attorneys' fees hinges on the argument that LendingTree failed to recognize its inability to prove non-infringement under the Court's claim construction. Following claim construction, wherein the Court repeatedly rejected LendingTree's broad

---

[4] The Court recognizes that the Apple case involved a motion for attorneys' fees pursuant to the Lanham Act and not the Patent Act, which applies in the case at bar.  As explained in Octane Fitness, and recognized by the Apple court, "the Patent Act and Lanham Act have 'identical fee-shifting provision[s]' and cited to a Lanham Act case that interpreted 'exceptional' to mean 'uncommon' or 'not run-of-the-mill.'"  Apple Inc., 11-CV-01846-LHK, 2014 WL 4145499, at * 6 (quoting Octane Fitness, 134 S.Ct. at 1756 (citing Noxell Corp. v. Firehouse No. 1 Bar–B–Que Rest., 771 F.2d 521, 526 (D.C. Cir.1985)).

interpretation of its claims in the patents at issue, LendingTree refused offers to settle and instead chose to pursue its infringement claims. While LendingTree's infringement allegations were substantially limited based on the Court's claim construction, LendingTree had at least a loose footing on which to rest its infringement arguments. The fact that claim construction gave Zillow an advantage on the infringement arguments does not warrant an award of attorneys' fees. See Kaneka Corporation v. Zhejiang Medicine Co., Ltd. et al, 2:11-cv-02389, pp. 6-7 (N.D. Cal. May 23, 2014) (denying attorneys' fees; rejecting the argument that "[i]mmediately following the claim construction, when Kaneka should have known that Defendants did not infringe the '340 Patent, Kaneka was obligated to stop pursuing the case or face paying attorney fees;" and holding that granting attorneys' fees for a motion for summary judgment following an adverse claim construction would unfairly preclude parties from appealing claim construction issues). "A claim construction ruling alone does not suffice to end a case at the trial court." Id. p. 6 (collecting cases). Similarly, this Court cannot conclude that *no* reasonable patentee could see an opening in the Court's claim construction to make viable (albeit feeble) infringement arguments.

LendingTree proceeded to summary judgment, and afterwards, to trial, as best it could. LendingTree reasonably argued that Zillow's accused system infringed on the patented claims because it requested "credit data" and satisfied the offer-related terms of the asserted claims. The evidence tending to support this argument was minimal, at best, but reasonably sufficient to allow the jury to consider the infringement claims. Reasonable argument – even an unsuccessful one – does not make a case exceptional.

Moreover, the Court consistently denied Zillow's arguments that it was entitled to judgment as a matter of law, which mitigates against a finding that LendingTree pursued meritless claims. Other courts have recognized that:

"Certain types of judicial rulings strongly indicate that a plaintiff's claim should not be deemed frivolous, groundless, or unreasonable . . . . [A] claim [may not] properly be deemed groundless where [a party] has made a sufficient evidentiary showing to forestall summary judgment and has presented sufficient evidence at trial to prevent the entry of judgment against him as a matter of law." LeBlanc–Sternberg v. Fletcher, 143 F.3d 765, 770–71 (2d Cir.1998). Thus, although the evidence that the [defendant's] handbags produced by Superior contained non-genuine snaps was overwhelming, this Court's ruling denying Plaintiff's Rule 50(a) motion precludes a finding that Defendants' argument was so frivolous or groundless as to justify an award of fees.

Romag Fasterners, Inc. v. Fossil, Inc., 3:10CV1827 JBA, 2014 WL 4073204, at *3 (D. Conn. Aug. 14, 2014); see also Bianco v. Globus Med., Inc., 2:12-CV-00147-WCB, 2014 WL 1904228 (E.D. Tex. May 12, 2014) ("[T]he fact that the Court denied [the defendant's] motion for summary judgment on the inventorship issue is not dispositive of the issue of objective baselessness, but it supports [the plaintiff's] argument that his inventorship claim was not frivolous. . . . [B]oth the Federal Circuit and the Fifth Circuit have recognized that a ruling denying summary judgment and permitting a claim to go to trial is an indication that the claim is not frivolous . . . .").

Here, despite the apparent strength of Zillow's case, this Court repeatedly rejected Zillow's dispositive motions at the summary judgment stage, during trial at the close of LendingTree's evidence, and at the close of all evidence, instead leaving the jury to resolve the merits. Additionally, by issuing a verdict in favor of LendingTree on Zillow's anti-trust claims, the jury rejected Zillow's claims that LendingTree had brought an objectively baseless case. Accordingly, the Court cannot say that LendingTree's pursuit of its infringement claims was so frivolous or groundless so as to justify an award of attorneys' fees.

### b.    Manner of Litigation

Zillow also argues that LendingTree pursued its claims in bad faith and litigated this case in an unreasonable manner. Although the Supreme Court clearly stated that "sanctionable

conduct is not the appropriate benchmark" to award attorneys' fees, <u>Octane</u>, 134 S.Ct. at 1757, nevertheless, post-<u>Octane</u> decisions awarding attorneys' fees "have concerned egregious behavior." <u>Gametex, LLC, v. Zynga</u>, 2014 WL 4351414, at *4-5 (N.D. Cal. Sept. 2, 2014) (collecting cases). In <u>Gametex</u>, the Court denied the defendants' motion for attorneys' fees after the court had granted the "rare" relief of entering judgment on the pleadings in favor of the defendants. <u>Id</u>. at * 3. The <u>Gametex</u> court noted that although the defendants' allegations suggested an aggressive litigation strategy by the plaintiff, "it falls short of conduct that has been found to justify fee-shifting even post-<u>Octane</u>." <u>Id</u>. This Court agrees that an aggressive litigation strategy by a patent holder is insufficient, without more, to justify an award of attorneys' fees. Even so, LendingTree's litigation strategy was not uniquely aggressive, notwithstanding LendingTree's counsel's obscure attempts to reargue claim construction on several occasions, including during trial. But being a sore loser does not make a case exceptional.

The Court has reviewed Zillow's other arguments regarding LendingTree's failure to comply with certain orders of this Court. The Court has already ruled on these issues as they arose by denying untimely and unmeritorious motions and precluding the admission of certain evidence and argument. Zillow has failed to prove that LendingTree's litigation tactics were more than a decision to pursue a weak case and the ensuing zealous representation by LendingTree's counsel based on the hand of cards they had been dealt.

Additionally, the Court is not convinced that LendingTree pursued a ruling on the merits with the sole purpose of obtaining a settlement agreement with Zillow. LendingTree sued multiple defendants in this case and resolved the case against several of them through settlement agreements. As mentioned above, the Court cannot ignore the jury's rejection of Zillow's anti-

trust claims. Zillow presented evidence and argument purporting to show that LendingTree acted in bad faith in bringing suit, with the motivation of directly interfering with Zillow's business. See Chalumeau Power Sys. LLC, 2014 WL 4675002, at *3. The jury disagreed with Zillow, and this is very telling. Had the jury returned a different verdict on those claims, the analysis here would be quite different.

Finally—and significantly—this case is readily distinguishable from those cases involving non-practicing entities whose sole business model is to acquire patents and litigate rights associated with the patents, usually in an attempt to obtain a settlement or license with the allegedly infringing company. The case between Zillow and LendingTree involved two sizeable, multi-national companies, both of which are practicing entities—direct competitors—that engaged in a legitimate fight over the breadth of the patents. One on hand, LendingTree sought to defend its patents, which LendingTree insisted covered its current business practices. On the other hand, Zillow zealously argued LendingTree's patents were not so broad as to encompass Zillow's current practices. From the filing of the complaint until the verdict, the parties were represented by sophisticated counsel who zealously advocated on behalf of their respective clients within the confines of the rules of law and ethics. Obviously, by the close of trial, some litigation tactics and arguments regarding the evidence proved successful, while others did not. Considering the totality of the circumstances, however, the Court is not convinced that a preponderance of the evidence suggests this case is any more exceptional than the other run-of-the-mill patent cases involving two sophisticated companies seeking a hard-fought judgment on the merits to protect their current business systems. Accordingly, Zillow's motion for attorneys' fees is DENIED. In light of this ruling and because LendingTree did not demonstrate how yet

another brief in this case would be helpful to the Court, the Court also DENIES LendingTree's Motion for Leave to File a Surreply.

> **2.      NexTag's Motion for Attorneys' Fees**

LendingTree's claims against NexTag compels a different result.  NexTag argues that LendingTree's suit against NexTag stands out from others with respect to the substantive strength, or lack thereof, in LendingTree's claims against NexTag.  In part, NexTag's motion mirrors or specifically incorporates Zillow's arguments in support of attorneys' fees.  The Court has already rejected these arguments and need not readdress them here.  The Court, instead, focuses on what makes the *LendingTree and NexTag case* exceptional – LendingTree's failure to conduct sufficient pre-suit investigation, failure to readily comply with NexTag's reasonable discovery requests and this Court's orders related thereto, and failure to recognize the substantive strength of NexTag's laches defense.

It is clear that a plaintiff must conduct careful investigation before bringing suit. Linex Technologies, Inc. v. Hewlett-Packard Co., 2014 WL 4616847, at *3 (N.D. Cal. Sept. 15, 2014) (citing Lumen View Tech., LLC v. Findthebest.com, Inc., 2014 WL 2440867, at *6 (S.D.N.Y. 2014) (finding the case to be "exceptional" because "the most basic pre-suit investigation would have revealed" that the infringement allegations had no merit)).  In ruling against the plaintiff-patent holder and awarding attorneys' fees, the Linex court held:

> In sum, Linex knew or should have known that its spread spectrum claims were meritless as asserted against OFDM technology. Linex's actions and admissions, considered alongside several fora's decisions rejecting its litigation arguments, show that Linex knew the limits of the spread spectrum technology that was crucial to the novelty of its patents. Linex exhibited "an overall vexatious litigation strategy" by continuing to hold these groundless claims over Defendants' heads to increase potential settlement amounts. Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd., 726 F.3d 1359, 1367 (Fed. Cir. 2013) cert. denied, 134 S. Ct. 1546 (2014) (affirming district court's award of attorney's fees).

Linex Technologies, Inc. v. Hewlett-Packard Co., 2014 WL 4616847 (N.D. Cal. Sept. 15, 2014). Although the crux of these rulings relates to the pre-suit investigation of the actual infringing product, their reasoning nonetheless applies to LendingTree's failure to reasonably investigate and "overall vexatious litigation strategy." Id. LendingTree's unreasonableness is not limited to its pre-suit conduct, but extends to its behavior during pretrial and trial proceedings. Indeed, after the lawsuit was filed, LendingTree continued to act unreasonably, as demonstrated by its pretrial conduct during discovery and other pretrial proceedings, as well as the unusual trial tactics exclusively related to the laches bench trial.

Following a full bench trial on the merits, the Court issued a lengthy order containing detailed findings of facts and conclusions of law demonstrating that laches and equitable estoppel completely barred LendingTree's claims against NexTag and any damages related to alleged infringement. The Court need not recap here the substantial evidence to support that ruling, but suffice it to say that hours of trial testimony and several key pieces of evidence recovered from LendingTree's backup tapes demonstrated that LendingTree knew of NexTag's allegedly infringing activity in excess of six years from filing its lawsuit.[5]

During discovery at the pretrial stage, LendingTree failed to produce relevant documentary evidence until after the Court issued two orders, one of which sanctioned LendingTree's counsel for their failure to promptly comply with a prior order. These orders came after countless emails and telephone conferences with the Court and the magistrate judge assigned to this case, attempting to resolve disputes among the parties.

Following the bench trial, the Court's order identified several key emails and internal documents involving LendingTree decision-makers and high-level employees that demonstrated

---

[5] The detailed findings of facts and conclusions of law are only summarily discussed herein for sake of brevity, but to the extent it is helpful for appellate review, the Court hereby incorporates that order (Doc. No. 570) by reference as if fully set forth herein.

LendingTree had constructive, if not actual, knowledge of the NexTag's potential infringement as early as May 5, 2003, and again on October 27, 2003. These documents came from the backup tapes LendingTree had initially refused to produce, even after Court order.

Nevertheless, the backup tapes and the evidence contained therein did not prove to be wholly dispositive of NexTag's laches defense. The Court found the testimony during the bench trial to be very compelling in favor of NexTag. Remarkably, LendingTree identified some witness only after it engaged in what appears to be last minute efforts immediately prior to and during trial to uncover these witnesses. The Court finds a probable inference that LendingTree anticipated that these witnesses' testimony would rebut the strength of NexTag's laches case, which had become apparent in reviewing the documents obtained from the backup tapes. LendingTree withdrew one of these witness only after NexTag had spent hours deposing him over a weekend in the midst of trial. Ironically, another of LendingTree's last minute witnesses, Debra Ashley, bolstered *NexTag's* case when she made honest concessions and admissions. The Court cannot overlook the extreme significance in the testimony by Ms. Ashley, LendingTree's Assistant General Counsel responsible for intellectual property matters, indicating that LendingTree was at fault for any failure to follow up on internal documents from 2003 referencing indicators of NexTag's potential infringement.

The analysis does not end with the unreasonable manner that LendingTree conducted discovery and identified relevant witnesses. As a whole, LendingTree litigated its case so as to string out the laches and estoppel case, forcing NexTag to incur costs and time to uncover what the Court conclusively found to be an unreasonable failure to timely bring suit against NexTag.

The Court cannot help but construe LendingTree's pursuit of this case against NexTag after producing and reviewing the electronic discovery and witness testimony as an indication of

at least a moderate level of unreasonableness.  Altogether, this was not a simple disagreement over the interpretation of evidence regarding the specific date LendingTree learned of NexTag's allegedly infringing systems.  Nor does this case warrant a finding of exceptional solely because of LendingTree's discovery missteps.  Nor was this case an average "close call case" between two parties merely seeking to litigate the claims on the merits.  This case is exceptional under a totality of the circumstances.  From the outset, LendingTree stonewalled NexTag's pursuit of the case-dispositive laches and estoppel defenses, refused to recognize the strength of NexTag's case, and proceeded with its minimally-sufficient infringement claims against NexTag at all costs.  Throughout the entirety of these proceedings, LendingTree incessantly sought to thwart NexTag's efforts to uncover evidence surrounding the timing and extent of LendingTree's knowledge of NexTag's allegedly infringing systems.

The Court holds that in light of the strength of NexTag's laches and estoppel defenses and the unreasonable manner with which LendingTree litigated those issues, at least a preponderance of the evidence indicates that LendingTree ostensibly used its patent as a business tool rather than intellectual property in its claims against NexTag.  Accordingly, this case is exceptional, and NexTag is entitled to attorneys' fees.  Had LendingTree: (1) engaged in a meaningful pre-suit investigation, (2) reviewed its internal communications about and external communications with NexTag, (3) conducted interviews with employees involved in those communications, and (4) disclosed those employees during the discovery period, then LendingTree would have realized the strength of NexTag's defense that laches and estoppel barred LendingTree's claims against NexTag in their entirety.  Frankly, had Mr. Lebda recalled any of the numerous emails to which he was a party back in 2003 involving NexTag's potentially infringing activity, then this case may have resolved a much earlier stage than a jury verdict and

bench trial. It is probable that NexTag would have been able to demonstrate to the Court the true strength of its laches and estoppel defenses at the summary judgment stage.

The Court finds that LendingTree should have realized the strength of NexTag's defenses at summary judgment. Although it was not apparent to the Court until the conclusion of the bench trial – in large part due to the testifying witnesses, some of whom had not been fully disclosed during discovery—the Court finds that those witnesses, their testimony (or inability to remember relevant information), and their admissions should have been known to LendingTree at least by summary judgment briefing and argument.

Accordingly, the Court will order LendingTree to pay *all* of NexTag's reasonable attorneys' fees incurred from the day that the Court issued its written order denying summary judgment, that is January 10, 2014. The Court stops short, however, of concluding that LendingTree's counsel engaged in conduct sufficient to satisfy the high standard required to hold counsel jointly responsible for the payment of attorneys' fees. The Court has already ordered LendingTree's counsel to pay fees for conduct the Court found to be appropriately attributed to them during the discovery process. NexTag has not satisfied the high burden to now hold counsel responsible for the entirety of fees –either solely or jointly responsible. During the bench trial, several of LendingTree's high-level employees testified they were unfamiliar with the abundance of internal communications discussing NexTag's allegedly infringing system as far back as 2003. The failure to recall specifics, however, does not relieve their employer of the burden to have been on notice of claims against NexTag. NexTag has failed to demonstrate that LendingTree's counsel acted with bad faith or intentionally abused the judicial process. Mr. Lebda's testimony at the jury and bench trials indicates a belief by LendingTree, as the client, that NexTag infringed on LendingTree's patent and LendingTree's assertion that it did not know

about NexTag's infringing activity until sometime in late 2004. LendingTree's counsel appears to have zealously advocated at the direction of their client and for their *client's* position, notwithstanding the bulk of evidence to the contrary. Therefore, the Court denies that portion of NexTag's motion seeking to hold LendingTree's counsel jointly liable for any award of attorneys' fees.

Because NexTag's original submissions sought its entire attorneys' fees, the Court needs supplemental information in order to determine the appropriate award. NexTag shall promptly submit an accounting of its reasonable attorneys' fees, as well as an expenses, incurred from January 10, 2014, along with a *short* explanation of their reasonableness. The accompanying supplemental brief shall be limited to 1,500 words, excluding exhibits, and is due no later than seven (7) calendar days from the date of this order, and LendingTree is permitted to file a supplemental response that is: (1) filed no later than seven (7) days after NexTag's submission; (2) no longer than 1,500 words, excluding exhibits; and (3) limited ONLY to the reasonableness of NexTag's requested fees and expenses. The Court DENIES NexTag's request to recover its portion of payment for the cost of backup tape recovery.

The facts and circumstances surrounding the LendingTree and NexTag case does not change the Court's earlier analysis regarding the strength of case and manner of litigation in the case between LendingTree and Zillow. Notably, NexTag did not assert an anti-trust claim against LendingTree, nor did the jury consider the wealth of evidence presented during the bench trial. Thus, the result here for NexTag is not at all precluded or otherwise impacted by the jury's finding in favor of LendingTree on the anti-trust claims. Moreover, the facts here, particularly those surrounding the laches and estoppel defenses, are sufficiently distinct to make the case against NexTag exceptional, while the Zillow case is not.

## C.     Zillow's Motion for Sanctions

Zillow moves that LendingTree be sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure.  Rule 11 provides that when an attorney advocates a position to a court, he certifies that he has performed "an inquiry reasonable under the circumstances" and (1) that claims, defenses and other legal contentions "are warranted by existing law or by a nonfrivolous argument" modifying the law; and (2) "the factual contentions have evidentiary support."  Fed. R. Civ. P. 11(b) (2),(3).

In determining whether Rule 11 sanctions are warranted, the Federal Circuit applies the law of the regional circuit.  <u>Source Vagabond Sys. Ltd. v. Hydrapak, Inc.</u>, 753 F.3d 1291, 1298 (Fed. Cir. 2014) (citations omitted) (citing <u>Antonious v. Spalding & Evenflo Cos. Inc.</u>, 275 F.3d 1066, 1072 (Fed. Cir. 2002)).  The Fourth Circuit has explained the Court must examine whether a party's litigation position was objectively reasonable.  <u>Morris v. Wachovia Securities, Inc.</u>, 488 F.3d 268 (4th Cir. 2006) (stating that a legal argument is not reasonable when "it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified").  Legal arguments comply with Rule 11 unless they have "absolutely no chance of success under the existing precedent."  <u>Id</u>. at 277.  Factual allegations comply with Rule 11 unless they are "unsupported by any information." <u>Id</u>.

Recently, the Federal Circuit Court of Appeals explained the applicable inquiry in evaluating motions for sanctions in a patent case:

> In patent lawsuits, defending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates. Rule 11(b)(2) mandates that, in any filing, counsel certifies he or she has made a reasonable inquiry that "the claims, defenses, and other legal contentions are warranted by existing law." Rule 11(b)(3) also requires that counsel certify they have made a reasonable inquiry into whether their factual contentions have evidentiary support. Sanctions may be imposed for counsel's failure to make a reasonable inquiry into either the facts or the law.

<u>Source Vagabond Sys. Ltd.</u>, 753 F.3d at 1298.

Zillow first requested sanctions over a year ago. This Court struck Zillow's original Rule 11 motion as premature due to Lending Tree's argument that Lending Tree had sufficient evidence of infringement. Zillow renewed its request for Rule 11 sanctions at the end of its summary judgment motion (Doc. No. 362 at 17), arguing the LendingTree had no evidence of infringement, and again, the Court declined to rule on that request (Doc. No. 457). Zillow has now renewed the motion for sanctions, generally based on the same arguments. Based on the Court's prior rulings, it finds that the renewed motion is timely.

Zillow argues that sanctions are appropriate because LendingTree pursued untenable claims in violation of Rule 11's requirement that attorneys cease advocacy after learning their position no longer has merit. Zillow contends that "it was objectively unreasonable for LendingTree to continue pursuing infringement when it knew it could not prove infringement under the Court's constructions." (Doc. No. 582 at 6). Zillow claims that any support or evidence LendingTree had for its position was based on a distortion or misrepresentation of this Court's claim construction, which lead to the unanimous verdict of non-infringement at trial. LendingTree denies that its pursuit of the infringement claims was frivolous, pointing out in its response that the claims survived summary judgment and reached the jury, thus satisfying the minimal reasonableness standard required by Rule 11. (Doc. No. 625).

There is a fine line between "creative advocacy," as LendingTree calls it, and advocacy that attempts to mislead or deceive the Court. LendingTree has not crossed this line. An attorney must constantly balance his duty to zealously represent his client with the Rule 11 prohibition against non-meritorious and frivolous claims. In this case, a question of fact existed as to

whether Zillow's system and operations satisfied the Court's claim construction, particularly in terms of "credit data," "offers," and the "whereby" clauses.

Even if LendingTree's arguments were likely doomed to fail following the Court's claims construction, a party is not required to immediately settle or appeal claim construction. The Federal Circuit has stated that claim constructions require further adjudication, even when the claim construction is determinative of infringement. See Nystrom v. TREX Co., 339 F.3d 1347, 1350 (Fed. Cir. 2003). As previously stated, claim construction was not determinative, as evidenced by this Court's denial of Zillow's motion for summary judgment.

In short, LendingTree's arguments based on the elasticity in the Court's claim constructions were minimally reasonable and do not amount to a pursuit of non-meritorious claims. Notably, this is not the first time Zillow has argued that LendingTree failed to present sufficient evidence, nor is it the first time Zillow has directed the Court to misstatements by LendingTree. Each time the Court heard argument, providing an opportunity for all parties to be fully heard. In fact, the record in this case hardly reflects a lack of briefing or oral argument, as all counsel in this matter frequently brought disagreements to the Court's attention during pre-trial, trial, post-verdict proceedings, and now post-trial motions and argument. Zillow's arguments in support of sanctions are far from novel at this stage in the game as between these parties. Zillow's arguments concerning Zillow's lack of evidentiary support and allegedly misleading statements have had the benefit of evaluation by this Court on numerous occasions. The Court has stated again and again in different ways—almost *ad nauseam*—that LendingTree had a weak case following claim construction, but claim construction did not prove to be dispositive at the summary judgment stage or in the Court's rulings up to the jury's verdict. The jury, as fact finder, applied the evidence at trial to the patent claims as construed by the Court

and issued what was considered the probable—but not certain—result in favor of Zillow. Notably, the same jury resolved Zillow's anti-trust claims in favor of *LendingTree*, thereby rejecting some the arguments Zillow now makes in support of sanctions. The Court has already noted the significant relevance of that portion of the verdict in analyzing the reasonableness of LendingTree's lawsuit. For these reasons, Zillow has not demonstrated that LendingTree's conduct in this case warrants Rule 11 sanctions.

### III. CONCLUSION

IT IS THEREFORE ORDERED that

1) LendingTree's Motion for Judgment as a Matter of Law on Invalidity for Improper Inventorship (Doc. No. 596) is DENIED;

2) LendingTree's Motion for Judgment as a Matter of Law on Infringement and Request for a New Trial (Doc. No. 597) is DENIED;

3) Zillow's Motions for Attorneys' Fees (Docs. Nos. 577, 603) is DENIED;

4) NexTag's Motions for Attorneys' Fees (Docs. Nos. 584, 587, 604, 619) are GRANTED IN PART and DENIED IN PART as explained herein; and an amount shall be determined followed by supplemental briefing as ordered herein;

5) LendingTree's Motion for Leave to File (Doc. No. 644) is DENIED;

6) Zillow's Motion for Sanctions (Doc. No. 582) is DENIED; and

7) Adchemy's Motion for Attorneys' Fees (Doc. No. 577) and Motion for Sanctions (Doc. No. 581) have been WITHDRAWN and are hereby DISMISSED AS MOOT.


IT IS SO ORDERED.

Signed: October 9, 2014

Frank D. Whitney
Chief United States District Judge