UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:10-cv-00439-FDW-DCK

| | |
|---|---|
| LENDINGTREE, LLC, a Delaware limited liability company,<br><br>   Plaintiff,<br><br>vs.<br><br>ZILLOW, INC., a Washington corporation; and NEXTAG, INC., a Delaware corporation;<br><br>   Defendants. | ORDER |

  THIS MATTER is before the Court on Defendant NexTag's Motion for Attorneys' Fees (Docs. Nos. 584, 587, 604, 619). The Court has already determined that NexTag is entitled to reasonable attorneys' fees incurred since January 10, 2014, which is the date that this Court denied NexTag's motion for summary judgment. (Doc. No. 664). In response to that Order, NexTag submitted a revised brief in support of reasonable attorneys' fees, expenses, and costs. LendingTree responded in opposition. This matter is now ripe.

  In short, NexTag requests attorneys' fees in the amount of $1,848,722.15 for legal bills, plus costs and expenses in the amount of $325,613.23, for a total award of $2,174,335.38. NexTag argues these fees are reasonable because: (1) NexTag's counsel operated using a "lean team of attorneys," involving several junior associates and discounted hourly rates for attorneys; (2) all parties were represented by large law firms with patent litigation expertise; and (3) all fees were necessary in light of LendingTree's allegations involving $125 million in damages from NexTag. LendingTree contends that the hourly rates charged by NexTag's counsel exceed

1

market rates for this forum. LendingTree instead proposes using reduced hourly rates, which would result in a fee recovery of $949,429.00. LendingTree further argues that this Court should lower the fee recovery by 80% because of "block billing, inadequate task descriptions and duplicative work." (Doc. No. 670, p. 5).

## I. ANALYSIS

The recent Supreme Court case of Octane Fitness, LLC v. Icon Health & Fitness, Inc., 134 S. Ct. 1749, 1755 (2014), drastically altered the standard by which patent cases are designated as "exceptional," thereby supporting an award of reasonable attorneys' fees. Octane Fitness, however, left undisturbed the body of law governing what constitutes a "reasonable" attorneys' fee to be awarded once a case has been deemed exceptional.

As an initial matter, the Court notes that Federal Circuit law, as opposed to Fourth Circuit law, governs the award of attorney fees in patent infringement cases. "We have consistently applied our law to claims for attorneys' fees under section 285 of the Patent Act because section 285 relates to an area of substantive law within our exclusive jurisdiction." Bywaters v. United States, 670 F.3d 1221, 1227-28 (Fed. Cir.), reh'g denied, 684 F.3d 1295 (Fed. Cir. 2012) (citing Q–Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1299 (Fed. Cir. 2004); 35 U.S.C. § 285).

"[T]he lodestar method today holds sway in federal-court adjudication of disputes over the amount of fees properly shifted to the loser in the litigation." Gisbrecht v. Barnhart, 535 U.S. 789, 802, 122 S. Ct. 1817, 1825, 152 L. Ed. 2d 996 (2002) (citations omitted). The Supreme Court has explained:

> Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." Developed after the practice of hourly billing had become widespread, the

> lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable, and unlike the Johnson approach, the lodestar calculation is "objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551-52 (2010) (internal citations omitted). The Supreme Court noted in Purdue that "'the "lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence." Id. at 551.

To calculate the lodestar rate under Federal Circuit law, this Court begins by multiplying the number of hours reasonably expended by a reasonable hourly rate. See Bywaters v. United States, 670 F.3d 1221, 1226 (Fed. Cir.) reh'g denied, 684 F.3d 1295 (Fed. Cir. 2012); see also Blanchard v. Bergeron, 489 U.S. 87, 94 (1989); Blum v. Stenson, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). As part of this calculation of the lodestar figure, the Court should also consider "the amount involved and results obtained," "the quality of a prevailing party's counsel's representation," and "the fee agreement" between the prevailing party and their counsel. Bywaters, 670 F.3d at 1231 (citations omitted). The reasonable hourly rate is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum, 465 U.S. at 896 n. 11. Specifically, the Federal Circuit has explained that forum rates should be used in calculating reasonable rates unless specific evidence shows that no local attorneys possess the special expertise for the case or that no local attorneys were willing to take the case. Bywaters, 670 F.3d at 1233-34.

A.   **Reasonable Hours Billed**

Here, the parties do not contest the reasonableness for the *amount* of hours billed by NexTag since January 10, 2014, although LendingTree argues that NexTag inadequately

3

described its billing entries. The Court has reviewed the billing records submitted under seal and finds the hours billed by both law firms representing NexTag to be reasonable, particularly in light of the complex nature of this patent litigation; the numerous, ongoing disputes among the parties; and LendingTree's litigation strategy. NexTag's counsel from the firm of Cooley LLP billed approximately 3,321.8 hours since January 10, 2014, and NexTag's local counsel from Womble Carlysle Sandrige & Rice, LLP billed approximately 175 hours since January 10, 2014. The Court finds both of these amounts to be reasonable. The Court further finds that counsel's billing entries adequately describe the work performed on behalf of their client. These entries provide sufficient information for the Court to review the tasks performed, without delving into unnecessary detail that could possibly expose information protected under the attorney client privilege and/or work product doctrine. The gravamen of the billing entries at issue involve trial preparation or attendance at trial—tasks for which specific detailed billing entries are unnecessary and could be unduly burdensome. Accordingly, LendingTree's argument to reduce the amount of billable hours because of "block billing" fails.

**B.    Reasonable Hourly Rates**

The second part of the Court's inquiry turns to the hourly rates claimed by NexTag. Here, NexTag employed a team of attorneys from the international law firm of Cooley, LLP, as well as local counsel from national firm of Womble Carlyle Sandridge & Rice, LLP. NexTag shared this local counsel with the other two Defendants who went to trial and, as a result, was responsible for one-third of local counsel's fees and expenses. The hourly rates charged by NexTag's counsel and legal support staff ranged from $949.50 to $110.00, depending on the experience of the attorney or staff member. (Doc. No. 668-11). In comparison, LendingTree's

4

attorneys and support staff charged between $828 per hour to $135 per hour, also depending on experience. (Doc. No. 673).

NexTag contends its attorneys were necessary because of their expertise to handle this large, complex intellectual property case. LendingTree argues that NexTag's fee recovery should be limited to prevailing market rates for attorneys in Charlotte, North Carolina, and not the fees charged by counsel.

### 1. Use of Out-of-State Counsel

The Court agrees with NexTag and finds that specific evidence supports NexTag's retention of counsel located outside this forum. All four parties in this matter were represented by large, international law firms with significant expertise in patent litigation. Notably, LendingTree, which has its principal place of business in Charlotte, North Carolina, retained lead counsel outside of Charlotte, North Carolina. Notwithstanding LendingTree's presence here, LendingTree has consistently and heavily relied on out-of-state counsel to perform the lion's share of litigation in this matter. LendingTree was originally represented by California counsel with the *international* law firm of Covington & Burling, LLP. These attorneys conducted the bulk, if not all, of LendingTree's arguments before the Court in the first part of the Markman Hearing on May 12, 2012. Weeks after that hearing, LendingTree substituted its Covington & Burling counsel with its current counsel, (Doc. No. 205), and subsequently noticed the appearance of approximately a dozen or more attorneys from New York and California from the international firm of Sheppard Mullin. LendingTree's local counsel originally hailed from the international law firm of McGuireWoods, although the attorney who remained local counsel during the course of this litigation left McGuireWoods during the pendency of this matter and

5

joined the regional law firm of Nexsen Pruet.

Further, based on the Court's knowledge gained through participation in the numerous court hearings, telephonic conferences, and trial, LendingTree's out-of-state counsel constantly appeared before this Court and performed the vast majority of the arguments and examination of witnesses throughout this litigation. Accordingly, this Court finds that substantial evidence tends to show that NexTag's retention of out-of-state counsel to defend against LendingTree's allegations was reasonable.

All parties' heavy reliance on out-of-state counsel also indicates that the "market rate" in this forum need not be limited to attorneys physically residing in this district. LendingTree, as Plaintiff, chose this venue. The Court will not permit LendingTree as the initiator of suit to intentionally handicap Defendants—NexTag specifically—in the recovery of attorneys' fees by hiring international counsel to file suit and then later limiting reasonable attorneys' fees to local counsel rates. To do so would permit a plaintiff to hire attorneys from national or international firms and then forum shop for a venue with an unusually-low average billable rate for local attorneys in order to limit a defendant's potential recovery of attorneys' fees later in the case.

LendingTree filed suit in the Western District of North Carolina and heavily relied on the expertise of non-local attorneys throughout this litigation. In so doing, LendingTree paid its lead counsel rates that are comparable to those charged by NexTag's lead counsel. LendingTree's own conduct provides evidence tending to show that no local attorneys possessed the special experience or expertise for this case and therefore make this case unusual.

**2. Prevailing Market Rates in the Relevant Community**

The Court need not narrowly calculate the lodestar rate by requiring that "prevailing

6

Case 3:10-cv-00439-FDW-DCK   Document 678   Filed 12/08/14   Page 6 of 11

market rates in the relevant community" be limited to only the hourly rates of attorneys physically residing in Charlotte or the Western District of North Carolina.  High-stakes patent litigation requires attorneys that must be exceptionally skilled in the law, as well as in the functional understanding of the scientific and technical information involved in the patents-in-suit.  This is a specific, sophisticated, and *national* bar.

Accordingly, the Court is inclined to not limit the forum rate to the relevant *venue*, but a "relevant community."  LendingTree argues that under the Bywaters case, the Court must only use "hourly rates in the forum where the case was brought."  670 F.3d 1232.  Bywaters imposed a geographic restriction for calculation of a lodestar rate in a case brought under the National Trails System Act, 16 U.S.C. § 1247(d), and 28 U.S.C. § 1346(a)(2), commonly known as the "Little Tucker Act."[1]  This Court finds Bywaters to be distinguishable.  In cases involving disputes where the amount in controversy does not exceed $10,000, as opposed to the $125 million in damages sought in the case at bar, it is probable that competent attorneys exist in every jurisdiction.  To conclude that competent counsel exists in every jurisdiction where patent cases are filed is incredibly unfair, and imposing a geographic limitation for "community," as applied in the non-patent case of Bywaters, would unnecessarily narrow the Supreme Court's use of the phrases "community" and "market rates" in Blum.  Litigants in patent cases should be permitted to obtain and be reimbursed in exceptional cases for attorneys' fees by counsel equivalent to their opposing parties.

For example, patent cases are frequently initiated by non-patent holders seeking a declaratory judgment of non-infringement.  In those cases, some perhaps filed in a rush to the

---

[1] Under the "Little Tucker Act," a plaintiff may bring a suit against the United States for claims not exceeding $10,000.

courthouse following receipt of a demand letter, the non-patent holder might likely choose the most convenient forum. In the same way, a patent holder might also file suit its most convenient venue. Because venue options inherently exist under the Patent Act, the initial choice of venue, while relevant, should not be wholly dispositive and limit the "relevant community" for purposes of determining the lodestar rate. For this reason, the Court finds NexTag's submission of the PeerMonitor Standard Rate Analysis (Doc. No. 668-4) and the American Intellectual Property Law Association Report of the Economic Survey 2013 (Doc. No. 668-5) to be persuasive, but not dispositive, in showing the reasonableness of the hourly rates charged by NexTag's counsel.

Even were the Court to limit calculation of the lodestar rate to prevailing rates in Charlotte, North Carolina, then part of the analysis of "market rates" must take into account what a litigant in the Western District of North Carolina is willing to pay an attorney for similar services. Here, LendingTree, which is a North Carolina limited liability company with its principal place of business in Charlotte, North Carolina, paid its out-of-state counsel between $324 for the most junior associate and up to $828 for its special counsel. (Doc. No. 673). As noted above, all but a few of these attorneys reside outside the Western District of North Carolina. The Court cannot ignore Plaintiff's choice of and reliance on out-of-state counsel and their rates when determining the prevailing "market rates" in the "relevant community." Indeed, these undisputed hourly rates paid by LendingTree *illustrate* the "prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 896 n. 11.

Moreover, the rates charged by NexTag's counsel are comparable for prominent civil litigators in Charlotte. For example, as reflected in an unpublished case from this district over

8

five years ago, prominent local attorney William Diehl charged $750 an hour during the litigation of a civil declaratory judgment action. Anderson v. Godley, 3:07-cv-318, 2009 WL 2881080 (W.D.N.C. September 8, 2009). NexTag's requested hourly rates billed in 2014 are not substantially higher than this amount. The Court finds that both inflation and the specialized knowledge required for complex patent litigation justify the rates charged by NexTag's counsel and make them comparable to local market rates.

### 3. Resulting Lodestar Rate

In short, LendingTree, as the initiator of suit in this case, drew first blood by filing claims against NexTag. In doing so, LendingTree hired outside counsel from prestigious international firms, many of whom charged LendingTree rates higher than those now sought by several members of NexTag's much-smaller staff of attorneys. Notably, the billing records here reflect that junior associate attorneys with lower billing rates performed a large part of NexTag's billable work in this matter, which NexTag contends demonstrates a conscious effort to reduce fees billed to NexTag and now sought against LendingTree.

Therefore, the Court concludes the fees sought by NexTag are reasonable based on the lodestar figure using prevailing hourly rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. See Blum, 465 U.S. at 896 n. 11. NexTag has adequately documented that the hours billed and fees charged were necessarily and reasonably incurred, and the time and labor expended appropriately matched the skill, experience, and effort required to address the nature and complexity of the matters at issue. These fees are in concert with market rates for patent litigation and are within prevailing market rates in the relevant community. Accordingly, the Court will award NexTag its attorneys' fees in

9

their entirety from January 10, 2014.

**C.     Expenses and Costs**

NexTag also seeks litigation expenses it incurred from January 10, 2014. LendingTree summarily objected to this portion of NexTag's motion without providing further authoritative support or argument. (Doc. No. 670, p. 5 n. 3 "LendingTree also objects to the [sic] NexTag's request for expert costs and hotel, travel and lodging costs, but is unable to fully address these issues given the Court's word limitation."). If NexTag managed to succinctly enumerate justification for such expenses and costs in its motion, then LendingTree could have, too.

Notwithstanding LendingTree's bare assertion otherwise, the Court has reviewed NexTag's pleadings and finds that its requested expenses and costs are appropriate under governing law.

> The purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit. Codex Corp. v. Milgo Electronic Corp., 541 F.Supp. 1198, 1201, 217 USPQ 878, 879 (D.Mass. 1982) ("The compensatory purpose of § 285 is best served if the prevailing party is allowed to recover his reasonable expenses in prosecuting the entire action."). We interpret attorney fees to include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit. . . . Accordingly, we conclude that the award of expenses was properly within the scope of § 285.

Cent. Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578 (Fed. Cir. 1983).

The Court finds that the circumstances of this case, as specifically explained in the Court's previous order (Doc. No. 664), justify the award of NexTag's expert witness fees, lodging expenses, overhead expenses, pre-judgment and post-judgment interest, and non-taxable costs. See MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 921 (Fed. Cir. 2012). Further, without the benefit of any argument by LendingTree as to the unreasonableness of the expenses

10

and costs sought by NexTag, the Court has separately reviewed the documents and records supporting these expenses and finds them to be reasonable.

Notably, NexTag only seeks to recover—and the Court only awards—the costs and expenses incurred by NexTag after January 10, 2014. These costs and expenses were necessary and the direct result of LendingTree's continued pursuit of its claims against NexTag after LendingTree should have realized the strength of NexTag's defenses. (See Doc. No. 664, p. 27). In addition, the use of damage and infringement experts were necessary, particularly to rebut the purported experts that LendingTree sought to use to prove its infringement case.

## II. CONCLUSION

IT IS THEREFORE ORDERED that NexTag's Motion for Attorneys' Fees (Doc. No. 668) is GRANTED. NexTag is directed to prepare a proposed judgment in accordance with this Order and submit it to the Court for signature no later than 11 a.m. Eastern Standard Time, on December 12, 2014.

IT IS SO ORDERED.

Signed: December 8, 2014

Frank D. Whitney
Chief United States District Judge